No. 96-359

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA, ON THE RELATION
OF FLOYD LEE LOVINS,

      Petitioner and Appellant,

  v.

TOOLE COUNTY, MONTANA, and ALLAN J.
UNDERDAL, DENIS FREELAND, and ALAN
RYAN, Toole County Commissioners,

      Respondents and Respondents.



FILED

SEP 12 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Ninth Judicial District,
                In and for the County of Toole,
                The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            William Conklin, Conklin, Nybo, Leveque & Murphy,
            P. C., Great Falls, Montana

      For Respondents:

            Ward Shanahan and Ronald F. Waterman, Gough,
            Shanahan, Johnson & Waterman, Helena, Montana

            Merle Raph, County Attorney, Shelby, Montana

                    Submitted on Briefs:  July 30, 1996

                            Decided:  September 12, 1996

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Floyd Lee Lovins appeals an order of the Ninth Judicial District Court, Toole County, granting summary judgment to Toole County and the Toole County Commissioners and imposing Rule 11, M.R.Civ.P., sanctions upon Lovins. By order dated July 30, 1996, this Court affirmed the District Court's judgment but reversed the imposition of sanctions, stating that a full opinion would follow.

We restate the issues as:

1. Whether summary judgment must be reversed because supporting affidavits filed with the court were not served upon the opposing party.

2. Whether the District Court erred in granting summary judgment.

3. Whether the court's sanction was an abuse of discretion.

Floyd Lee Lovins, acting pro se, filed this action in the District Court in April 1996. He asked the court to stay proceedings by which the Toole County Commissioners proposed to borrow $1,700,000 through the Montana Health Facility Authority to construct an addition to Toole County Hospital and Nursing Home. The proposed addition would house administrative facilities and an outpatient and physicians' clinic. Lovins claimed that Toole County could not borrow the money without first submitting the question to a vote of county electors as required under § 7-7-2402, MCA.

The defendants moved for summary judgment on the basis of res judicata or collateral estoppel. They asked the court to take

2

judicial notice of a previous action, Lovins v. Toole County, Ninth Judicial District Court Cause No. DV-95-009. Lovins had filed that case a year before to prevent a proposed lease arrangement under which a private nonprofit corporation would take over operation of the hospital. In that action, the court granted Lovins a writ of prohibition in August 1995.

In the present case, the District Court ruled that res judicata barred the action and that Lovins was estopped from proceeding further on this issue because he had unsuccessfully made the same legal arguments in the 1995 case. The court also ruled that § 7-6-2512(2), MCA, allows Toole County to agree to levy the tax and pledge it to payment of bonds issued under § 7-34-2411, MCA; and that § 7-6-2512(2), MCA, specifically provides that pledge of these taxes to secure bond payment cannot be used to cause the bonds to be considered indebtedness of the county for any purpose.

The court further found that Lovins had unreasonably and vexatiously multiplied the proceedings. As a sanction pursuant to Rule 11, M.R.Civ.P., and to discourage abusive litigation tactics, the court prohibited Lovins from commencing or filing any further litigation in Toole County for the next four years as a pro se litigant without first obtaining permission from a district judge.

Lovins appealed to this Court. The defendants asked, without objection by Lovins, that this appeal be considered on an expedited basis. They pointed out that the normal appellate review schedule would delay the Court's decision beyond this year's deadline for funding requests through the Montana Health Facility Authority. On

3

July 30, 1996, the Court issued an order affirming the District Court's grant of summary judgment but reversing the imposition of Rule 11 sanctions and remanding "for further proceedings pursuant to our opinion in the case."

## ISSUE 1

Must summary judgment be reversed because supporting affidavits filed with the court were not served upon the opposing party?

Rule 56, M.R.Civ.P., allows a party to file affidavits in support of a motion for summary judgment. While the Rule does not specifically so state, logic and fairness dictate that affidavits so filed shall also be served on the opposing party. We take this opportunity to note for the Bench and Bar that not only is service of affidavits in support or opposition to motions for summary judgment or other substantive motions logical and fair, but also that failure to serve such affidavits may in some circumstances raise an issue of due process.

In this case, the defendants filed the affidavits of Gary Zadick and Allan Underdal in support of their motion for summary judgment, but they did not serve copies of those affidavits upon Lovins prior to the hearing on their motion. The record shows, however, that Lovins failed to preserve his objections to the court's alleged reliance upon the affidavits of Zadick and Underdal. Lovins raised the matter of failure to timely serve the Zadick and Underdal affidavits only in his own affidavit which was filed with his initial brief on appeal. We will not hold a

4

district court in error for an omission which it was not given an opportunity to correct.

Moreover, a third affidavit, of Toole County Commissioner Denis Freeland, was filed with the summary judgment motion, so that the information contained in the two challenged affidavits was already before the court in another form. In his affidavit, Freeland attested to the matters discussed in the District Court's summary judgment order. The court's summary judgment order stated that "an affidavit" had been submitted in connection with the motion for summary judgment.

In its summary judgment order, the District Court also discussed the Resolution by which Toole County proposed the 1996 bond issue. A copy of that Resolution was attached to the Underdal affidavit. The court's order stated that the bond issue as revealed in that Resolution was essentially the same as the issue involved in the 1995 action. However, the court also stated that there would not be an issue of material fact even if the bond issues were different.

Even assuming that the District Court considered the two challenged affidavits and that this issue was preserved, we conclude that no error has been demonstrated. We hold that, under the circumstances here presented, failure to serve the two supporting affidavits is not grounds for reversal.

ISSUE 2

Did the District Court err in granting summary judgment?

5

Our standard of review of a summary judgment is the same as that used by a district court--whether, pursuant to Rule 56(c), M.R.Civ.P., material issues of fact exist and whether the moving party is entitled to judgment as a matter of law. Motarie v. N. Mont. Joint Refuse Disposal (1995), 274 Mont. 239, 242, 907 P.2d 154, 156.

The District Court determined that res judicata barred Lovins from challenging the legality of the proposed bond on the ground that § 7-7-2402, MCA, requires the approval of the electors of the county. The court's ruling was based on its taking judicial notice of Lovins' 1995 action.

Section 7-7-2402, MCA, provides:

**Election required to borrow money--exceptions.** (1) Except as provided in subsection (3), the board of county commissioners may not borrow money for any of the purposes mentioned in this title or for any single purpose in an amount exceeding $500,000 without:
    (a) first having submitted the question of a loan to a vote of the electors of the county; and
    (b) the approval of a majority of the electors of the county.
    (2) If a majority of the votes cast are in favor of the loan, then the board may make the loan, issuing bonds or otherwise as may seem best for the interests of the county.
    (3) It is not necessary to submit to the electors the question of borrowing money:
    (a) to refund outstanding bonds; or
    (b) for the purpose of enabling any county to liquidate its indebtedness to another county incident to the creation of a new county or the change of any county boundary lines.

Lovins points out that this statute was not mentioned in his petition for relief in his 1995 lawsuit. However, as part of its decision in the 1995 action, the District Court stated that Toole County's acquisition of over $500,000 in debt for bond repayment

for construction of the clinic "would require a vote of the Toole County electorate to approve the indebtedness."

The defendants moved to alter or amend that judgment by removing the above language from the court's decision, in light of the then-recently enacted Ch. 520, L. 1995. That legislation, which was proposed as HB 421, amended Montana laws relating to construction of county hospitals and limitations upon bonded indebtedness of counties for such purposes. The issue was briefed by both parties.

In its order granting the motion to amend, the court gave thorough written consideration to the effect of HB 421. It stated:

> When read with the inclusion of physician office buildings as part of "health care facilities" which can be funded by bonds, the amendment to Section 7-6-2512 makes it clear that the vote of the electorate is not required for approval of certain bonds to construct "health care facilities." See HB 421, Section 4, amending Montana Code Annotated, Section 7-34-2201.

The above language clearly demonstrates that the issue was considered by the court in the 1995 case.

Lovins argues that the decision on this issue in the 1995 case was, nevertheless, mere dictum. He points out that if an issue's consideration is not essential to the question involved in the action, then a ruling on the issue is obiter dictum which cannot be a basis for a finding of res judicata or collateral estoppel.

> If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta[.]

Restatement (Second) of Judgments, § 27, cmt. h (1982).

7

A court's decision on an issue which is before it and which was fully argued by counsel and deliberately considered by the court is not dictum. Bottomly v. Ford (1945), 117 Mont. 160, 167, 157 P.2d 108, 112. Here, although the election requirement issue was briefed and decided in the 1995 case, the issue was not before the court under the pleadings, nor was consideration of it necessary to resolve the case. The dispositive holding in the 1995 case was that Toole County was prohibited from entering into a proposed lease of Toole County Hospital and Nursing Home to a private nonprofit corporation. Because resolution of the election requirement issue was not necessary to resolution of the 1995 case, the court's consideration thereof, however well-reasoned, is dictum.

Our analysis does not end there, however. We will affirm a judgment which was correct, even if it was granted for the wrong reason. Higham v. City of Red Lodge (1991), 247 Mont. 400, 402, 807 P.2d 195, 196. We therefore proceed to consider whether Toole County was required to put its hospital bonding proposal to a vote of the people.

The title of Ch. 520, L. 1995, describes the act, in part, as "clarifying that certain bonds may be issued without an election." Section 7-34-2411, MCA, was amended as part of Ch. 520. As amended, the statute provides:

> **County health care facility bonds authorized.** (1) Notwithstanding any limitation imposed by law upon the bonded indebtedness of a county, a county acquiring, erecting, furnishing, equipping, expanding, improving, or maintaining a health care facility under 7-8-2102 or 7-34-2201 or a boarding home under 7-34-2301 may borrow

8

money and issue its bonds for a health care facility or a boarding home, including refunding bonds, in the form and upon the terms as it may determine, payable out of any revenue of the facility or boarding home, respectively, including revenue derived from:

    (a) fees and payments for health care or boarding home services;

    (b) taxes levied under 7-6-2512 or 7-34-2417 for a health care facility;

    (c) grants or contributions from the federal government; or

    (d) any other sources.

    (2) For the security of the bonds, the county may by resolution make and enter into any covenant, agreement, or indenture and exercise any additional powers authorized to be made, entered into, or exercised by a county, including those authorized in 7-6-2512 and this part. The sums required to pay principal and interest and to create and maintain a reserve for the bonds may be made payable from any and all revenue of the health care facility or boarding home prior to the payment of current costs of operation and maintenance of the facilities.

Section 7-34-2411, MCA (emphasis supplied). Subsection (2) was added to § 7-6-2512, MCA, as part of the same legislation:

> If a county issues bonds under 7-34-2411 to finance or refinance the costs of a health care facility, the board of county commissioners may covenant to levy the tax authorized by this section during the term of the bonds, to the extent necessary, and to apply the collections of the tax to the costs of erecting, furnishing, equipping, expanding, improving, maintaining, and operating the health care facility or facilities of the county or the payment of principal of or interest on the bonds. The pledge of the taxes to the payment of the bonds may not cause the bonds to be considered indebtedness of the county for the purpose of any statutory limitation or restriction. The pledge may be made by the board only upon authorization of a majority of the electors of the county voting on the pledge at a general or special election as provided in 7-34-2414.

Section 7-6-2512(2), MCA (emphasis supplied).

Section 7-34-2414, MCA, was also amended as part of Ch. 520, to provide in relevant part:

> **Election required on question of issuance of bonds.** (1) A county may not issue bonds to which all or a portion of

9

> the taxes levied under 7-6-2512 are pledged or to which the general tax authorized under 7-34-2418 is pledged until the question of approval of the issuance of the bonds has been submitted to the registered electors of the county at a general election or a special election called for that purpose by the governing body of the county and the majority of the electors voting on the question have voted in favor of issuing the bonds.

Section 7-34-2414(1), MCA (emphasis supplied).

The proposal involved here, as described in the notice of public hearing attached to Lovins' complaint, the Toole County Commissioners' Resolution to issue the bonds, and the sample bond attached thereto, was solely for a revenue bond issue. Payment of principal and interest to the bondholders is to be derived solely from revenues of the Toole County Hospital and Nursing Home, and not from Toole County taxes. This was not a proposal for general obligation bonds, for which an election would have been required under the portion of § 7-34-2414, MCA, underlined above.

Lovins points out that these statutes must be harmonized with preexisting statutes on this subject. He contends that such harmonization necessarily results in a conclusion that while the 1995 amendments abolish limitations on bonded indebtedness for county hospitals, they do not repeal the requirement that borrowing for such purposes is subject to a vote pursuant to § 7-7-2402, MCA.

We disagree. To accept Lovins' argument would render portions of the 1995 amendments meaningless. In part, the amended statutes provide that indebtedness for repayment of health care facility bonds is not to be considered indebtedness of the county "for the purpose of any statutory limitation or restriction." Section 7-6-2512(2), MCA. Certainly the § 7-7-2402, MCA, election requirement

10

is a "statutory limitation or restriction." As amended, § 7-34-2414, MCA, requires an election on such a bond issue only when "all or a portion of the taxes levied under 7-6-2512 are pledged or to which the general tax authorized under 7-34-2418 is pledged." Therefore, we conclude that indebtedness for repayment of the health care facility bonds herein proposed is not to be considered indebtedness of the county for purposes of the § 7-7-2402, MCA, election requirement.

Contrary to the assertions in Justice Nelson's dissent, the present action does bring directly into issue the effect of the statutory amendments enacted as part of Ch. 520. Ch. 520 carves out an exception to the requirements set forth at § 7-7-2402, MCA, the statute relied upon by Lovins.

Any lingering ambiguity in statutory intent is erased by an examination of the legislative history of Ch. 520. In summarizing the purpose of HB 421 to the Senate Local Government Committee, its sponsor, Rep. Ewer, stated:

> HB 421 would clarify that districts can borrow using the revenue bond route not subject to a vote of the people and general obligation bonds could be authorized which require a vote of the people.

Minutes of Senate Local Government Committee, Comments of Rep. Ewer, March 21, 1995, at p. 2.

We conclude that under the foregoing statutes, a vote of the electorate is not required before Toole County issues bonds for the proposed addition to the Toole County Hospital and Nursing Home. We therefore hold that the District Court did not err in granting summary judgment for the defendants.

11

ISSUE 3

Was the court's sanction an abuse of discretion?

The District Court found that Lovins unreasonably and vexatiously multiplied the proceedings in his two actions concerning the hospital. The court stated that it could by "no stretch of the imagination" find that there existed a good faith argument or reasonable facts on which to base this litigation. As a sanction under Rule 11, M.R.Civ.P., the court prohibited Lovins for the next four years from commencing or filing any further litigation in Toole County as a pro se litigant without first submitting the pleadings to and obtaining permission to file from a district judge.

Rule 11, M.R.Civ.P., provides, in relevant part:

The signature of an attorney or party [on a pleading, motion, or other paper filed] constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

In applying Rule 11, this Court has stated:

Although Montana's Rule 11 does not state that a trial court must give notice to show cause and hold a hearing before imposing Rule 11 sanctions, we hold that a trial court should do so in order to provide the party

12

with due process. The party should be afforded sufficient time in which to prepare its case against imposition of sanctions. In addition, a trial court should specify in its judgment or order upon which pleading(s), motion(s), or other paper(s) it bases imposition of Rule 11 sanctions.

Lindey's, Inc. v. Goodover (1994), 264 Mont. 489, 497, 872 P.2d 767, 772.

No hearing was held on the question of sanctions in this case. Lindey's clearly requires a hearing before Rule 11 sanctions may be imposed. Because of the court's failure to hold such a hearing, the sanction herein imposed cannot stand and is therefore reversed.

We affirm the judgment of the District Court with the exception of the imposition of sanctions.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

13

Justice James C. Nelson dissenting.

In our rush to decide this case on an expedited basis we may well have made bad law on an issue of first impression. I did not join this Court's July 30, 1996 order for the reasons hereinafter set forth, and I now dissent from our decision.

At the outset, and while not the primary focus of my dissent, I find little comfort in our decision on Issue 1. Rule 5, M.R.Civ.P., clearly requires that copies of motions and supporting documents be served on the adverse party or, if represented, on his attorney. Whether Lovins, a pro se litigant in the trial court, preserved his objection or not, counsel's[1] failure to serve him with the affidavits supporting a motion for summary judgment that was about to be heard by the court, cannot be simply rationalized away as easily as we do. Especially where, according to Lovins' affidavit, he was sitting in the hallway outside the courtroom and the clerk's office when the affidavits were filed May 22, 1996. While acknowledging that the affidavits of Allan J. Underdal and Gary M. Zadick were not served on Lovins, we excuse that breach of Rule 5, M.R.Civ.P., on the basis that the affidavit of Denis Freeland was filed with the County's motion for summary judgment on May 6, 1996, and therefore, presumably, was served on Lovins. Even assuming, arguendo, that Freeland's affidavit was served on Lovins, Freeland's affidavit addresses different matters than either Underdal's or Zadick's affidavits. Further, the 1996 bond

_____

[1]The County's counsel on appeal is not the same counsel that represented the County before the trial court.

14

resolution which figured into the County's summary judgment argument was only attached to Underdal's affidavit and was not otherwise a part of the record. The court's reference to the 1996 bond resolution during oral argument did not cure counsel's failure to comply with the clear mandate of Rule 5, M.R.Civ.P. See e.g., Kenner v. Moran (1994), 263 Mont. 368, 376, 868 P.2d 620, 625, wherein we set aside the grant of summary judgment where the movant did not give the opposing pro se litigant the ten-day notice required under Rule 56(a), M.R.Civ.P.

Secondly, in view of my position on Issue 2, I would, likewise, vacate the District Court's Rule 11, M.R.Civ.P., sanctions imposed against Lovins. There was no basis for sanctions. As we have concluded, Lovins' second suit was not barred by res judicata or collateral estoppel. Moreover, on the merits, I believe that the District Court erred in granting summary judgment to the County. The fact that sanctions were imposed without a hearing serves further to emphasize the trial court's error.

With that said, and with regard to the majority's discussion of the bond issue, I submit that the trial court and, now, this Court have ruled on an issue that was never properly joined in the underlying litigation. Lovins' 1996 suit against Toole County was to prevent the County from borrowing $1.7 million from the Montana Health Facility Authority (MHFA) pursuant to a notice published on April 25, 1996, wherein the MHFA stated its intention to issue $5.220 million in bonds under Title 90, Chapter 7, parts 1, 2 and

15

3, MCA, with the proceeds to fund, among other things, the loan to Toole County. Lovins contended that the County was prohibited by § 7-7-2402, MCA, from borrowing the $1.7 million without a vote of the electors. That is plainly all his suit was about.

In that respect, § 7-7-2402, MCA, is clear that, with two exceptions not at issue here, the board of county commissioners may not borrow money for any of the purposes mentioned in Title 7 of the Montana Code (which by definition includes the construction, furnishing, operation and maintenance of health care facilities, §§ 7-8-2102 and 7-34-2201, MCA, and boarding homes, § 7-34-2301, MCA) or for any single purpose in an amount exceeding $500,000 without first obtaining a favorable vote of the majority of electors of the county. *If* the electors approve the loan, then the county can make the loan, "*issuing bonds* or otherwise. . . ."

The District Court order granting summary judgment and our decision, however, focus not on § 7-7-2402, MCA, but on § 7-34-2411, MCA[2], and conclude that the provisions of that latter section along with §§ 7-6-2512(2) and 7-34-2414, MCA, obviate the necessity for any vote on the issuance of bonds by the County for the proposed addition to the Toole County Hospital.

The problem with this approach is that over the course of two different lawsuits the issue of the applicability and proper interpretation of §§ 7-34-2411, MCA, et. seq., regarding Toole County's financing of its proposed hospital addition was never

---

[2]All statutory references are to the 1995 version of the Montana Code Annotated.

16

properly joined in Lovins' litigation. Rather, in both Lovins' 1995 and 1996 suits, the interpretations of §§ 7-34-2411, MCA, et. seq., which we uphold here, were inserted gratuitously, as dicta, by the district courts.

In his 1995 suit, Lovins sued to stop the County from unlawfully leasing the hospital facility, and he won on that issue. Lovins never sued to stop the County from issuing revenue bonds. Properly, we have concluded that the trial court's subsequent opinion interpreting the HB 421 amendments was dictum.

Lovins' 1996 suit was filed to stop the County from borrowing $1.7 million which MHFA was going to loan to Toole County from the proceeds of the bonds *it (MHFA) was going to issue*. Lovins simply contended that § 7-7-2402, MCA, prohibited that loan without a vote. The proposal described in the notice attached to Lovins' 1996 complaint did not address Toole County issuing revenue bonds under §§ 7-34-2411, et. seq. Rather, that notice involved MHFA issuing bonds under authority of a completely different Title and Chapter of the Montana Code and its then *loaning* $1.7 million to Toole County. How Toole County was going to secure or pay for that loan was not the issue raised in Lovins' 1996 suit.

Moreover, the County's primary defense of the 1996 suit was that Lovins' action was barred by the res judicata and collateral estoppel effect of the District Court's 1995 opinion--the same opinion which we have now concluded was dictum. In line with that defense the District Court granted summary judgment on the basis of res judicata and collateral estoppel. The court could have and

17

should have simply stopped at that point. However, committing the same mistake as did the trial court in the 1995 suit, the District Court similarly went further and gratuitously added a one paragraph ruling on the applicability of the HB 421 amendments. If the trial court's opinion on the HB 421 amendments was dictum in the 1995 suit, then on the same rationale, the District Court's ruling on that same issue in the 1996 suit should be dictum as well. In neither the 1995 nor the 1996 suit was the court's ruling on the HB 421 amendments essential to dispose of Lovins' complaints.

We have now brought this error full circle. We have issued a substantive opinion on a legal question that was addressed as nothing more than dicta in two different district court decisions. As a consequence, I suggest that our decision is of little precedential value. The courts have saved Toole County's hospital addition and have allowed the County to borrow the $1.7 million from MHFA. However, the courts have accomplished that at the expense of what may very well be the flawed interpretation of statutes not at issue and, perhaps, the loss of the right of the electors of Toole County--who, if experience is any teacher, may likely have to pick up the tab at some point in time--to vote on this important issue. So much for "expedited" decisions. I can only hope that before bond counsel in some future offering relies on our decision here, this whole issue will be thoroughly reexamined and, if necessary, re-litigated.

As to the merits of our decision on Issue 2, Lovins, who on appeal is represented by counsel, has advanced well-reasoned,

18

legitimate arguments that are not analyzed in our opinion. Lovins contends that the 1995 amendments to §§ 7-6-2512(2), 7-34-2411, and 7-34-2414, MCA, contained in HB 421 do not address county election requirements for borrowing. Rather, Lovins maintains that language in those sections underscored in the majority opinion refers to the limitations on the amount of bonded indebtedness to which a county may obligate itself under § 7-7-2203, MCA, and similarly worded statutes but does not purport to exempt such bonds from the limitation on county indebtedness set forth in § 7-7-2101, MCA. Moreover, Lovins argues that the amendments do not make any reference to the requirement of § 7-7-2402, MCA, referred to above.

Lovins concludes that reading together the various statutes, including § 7-6-2512(2), MCA, demonstrates two different election requirements for county projects. If a health care facility bond issue is to be supported or financed by general tax support, then § 7-6-2512(2), MCA, requires an election regardless of the size of the bond obligation. On the other hand, any loan to a county exceeding $500,000 for a single purpose requires a vote of the electors pursuant to § 7-7-2402, MCA, whether or not bonds are issued to finance the project. Neither election scheme is dependent upon or related to the other. Lovins maintains there is nothing in HB 421 that indicates that the general requirement for election approval of county loans exceeding $500,000 was contemplated in that Act.

Given the cursory manner in which we have treated this complicated issue, I do not know who is correct. I am not, however,

persuaded by anything that I have read in the briefs or in our decision that Lovins may not well be right. That aside, and more importantly, we err in attempting to interpret, as a matter of first impression, statutory language where the statutes involved were never properly at issue in the trial court. I am all the more concerned with that error because the precedential effect of our decision will sanction local governments to incur literally millions of dollars of debt, without a vote, where, arguably, there is a statutory requirement for an election.

I dissent.

_____
Justice

Justice Karla M. Gray joins in the foregoing dissent.

_____
Justice