No. 93-049

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

**FILED**

IN THE MATTER OF W.L., C.L., and B.L.,

SEP 16 1993

**Youths in Need of Care.**

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Big Horn,
               The Honorable Robert W. Holmstrom, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          James L. Vogel, Attorney at Law, **Hardin,**
          Montana (for the Mother)

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Deanne L. Sandholm, Assistant Attorney General,
          Helena, Montana; James Torske, Special Big Horn
          Deputy County Attorney, **Hardin,** Montana;
          Natasha Morton, Attorney at Law, **Hardin,** Montana
          (for the Father); Joe A. Rodriguez, Attorney at
          Law, Lame Deer, Montana (Guardian Ad **Litem)**


                       Submitted on Briefs:   April 30, 1993

                              Decided:   September 16, 1993

Filed:

_____
             Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant, the natural mother of W.L., C.L., and B.L., appeals from an order of the Thirteenth Judicial District Court, Big Horn County, denying her motion to transfer jurisdiction of dependency and neglect proceedings to the Northern Cheyenne Tribal Court pursuant to the Indian Child Welfare Act, 25 U.S.C. § 1911 (1978).

We affirm.

We determine the following issue to be dispositive:

Did the District Court err in denying appellant's motion to transfer jurisdiction of dependency and neglect proceedings to the Northern Cheyenne Tribal Court, pursuant to the Indian Child Welfare Act, 25 U.S.C. § 1911 (1978)?

This case came before the District Court on January 27, 1989, when the Department of Family Services (DFS) filed a petition for temporary investigative authority and protective services. The subjects of the petition are three children of the natural mother, G.Y., and the natural father, W.L. The petition alleged that G.Y. neglected and physically abused the children. The petition also alleged that she did not stop individuals from sexually abusing the children.

The parents and the three children are enrolled members of the Northern Cheyenne Tribe. From the time the couple married until the time of their divorce in September 1987, the family lived with the paternal grandparents off the Northern Cheyenne Reservation (the Reservation) in Lodge Grass, which is within the boundaries of the Crow Indian Reservation. G.Y. testified that she lived with

2

the children in Lame Deer, which is on the Reservation, from September 1987 to April 1988. Afterward she moved to **Hardin** which is off the Reservation. The children were often cared for by the paternal grandparents in Lodge Grass. The children never had any close contact with the Tribe or **G.Y.'s** family. At the time of the filing of the petition, the youths resided in **Hardin** with their mother.

On January 30, 1989, the District Court issued an order for protective services and an order to show cause. On January 31, 1989, the District Court issued a notice to the Tribe, pursuant to the Indian Child Welfare Act of 1978, 25 U.S.C. § 1912. On February 13, 1989, the court granted the petition for temporary investigative authority and protective services and directed that provisions of the order issued January 30, 1989, should remain in full force and effect until May 1, 1989. On April 19, 1989, a motion to extend temporary investigative authority was filed. On April 24, 1989, the motion was granted and the court extended the order for protective services for 90 days.

On July 28, 1989, another petition for investigative authority and protective **services** was filed. On July 31, 1989, an order for protective services and order to show cause was issued. On September 5, 1989, the court issued an order for protective services modifying and extending the July 31, 1989, order for 90 days.

On November 13, 1989, a petition for temporary custody was filed. On March 25, 1991, after several stipulated continuances,

3

a hearing on the petition was held. The court ordered the temporary custody hearing continued until April 22, 1991, and ordered that the existing order was to remain in effect. On April 22, 1991, the hearing resumed during which the parties, through counsel, stipulated to an extension of the temporary custody for one year from January 30, 1991.

On September 11, 1991, G.Y. moved to transfer the case to the Northern Cheyenne Tribal Court. The matter was continued for the convenience of counsel and the court. On May 20, 1992, a second motion to transfer was filed. The motion was noticed for hearing on May 26, 1992. The motion was considered and continued until June 22, 1992, in order to obtain transcripts of the proceedings held on March 25, 1991, and April 22, 1991. On June 22, 1992, the court issued an order continuing the January 30, 1990, temporary custody order. On June 22, 1992, the Tribe's motion to intervene was granted.

A hearing on the question of whether the District Court should transfer jurisdiction of the case to the Tribe was held on September 21, 1992. On October 19, 1992, the District Court issued its order denying the motion to transfer jurisdiction. G.Y. appeals the order.

G.Y. contends that the District Court lost jurisdiction on January 22, 1992, because the State of Montana failed to continue its intervention and custody of the children when it allowed the court's oral order of April 22, 1992, granting temporary custody to lapse while G.Y. was domiciled on the Reservation.

4

Section 1911 of the Indian Child Welfare Act establishes a dual jurisdictional scheme between the State and the Indian Tribe. Section 1911(a) provides that when an Indian child is domiciled within the Reservation, the Indian Tribe:

> [S]hall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

In State court proceedings, where an Indian child is not domiciled within the reservation of the child's Tribe, § 1911(b) provides that:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.

The guiding light in determining domicile for the purpose of jurisdiction is Mississippi Band of Choctaw Indians v. Holyfield (1989), 490 U.S. 30, 104 L. Ed. 2d 29, 109 S. Ct. 1597. In that case, the parents were enrolled members of the Tribe, residents on the reservation, and both were domiciliaries of the reservation. Holyfield, 490 U.S. at 37. The Court enunciated the rule that since most minors are incapable of forming the requisite intent to establish domicile, their domicile is determined by their parents. Holyfield, 490 U.S. at 48.

5

In this case, G.Y. was domiciled off the Reservation in Hardin at the commencement of the proceedings. The natural father had objected to the transfer of jurisdiction to the Tribe, and the Tribe declined to take jurisdiction of the matter. The District Court has properly exercised jurisdiction over this case.

G.Y. maintains that the State did not strictly follow procedures mandated by § 41-3-401, MCA, by not requesting another extension of temporary custody, and as a result, the District Court lost jurisdiction over the case. In Matter of Guardianship of Doney (1977), 174 Mont. 282, 570 P.2d 575, we stated that the procedures established by § 41-3-401, MCA, must be strictly followed by the State before it may deprive natural parents the custody of their children.

In this instance, the District Court did not lose jurisdiction of the case. Under common principles of jurisprudence, after a court has obtained jurisdiction, it retains that jurisdiction until the final disposition of the case. 21 C.J.S. *Courts* § 73 (1990). In the absence of statutory language, an interlocutory order may be amended, modified, or vacated, provided that no final judgment or order has been rendered. 60 C.J.S *Motions **and Orders*** § 62(3) (c) (1969). As we have stated:

> [W]here the jurisdiction of a court is exclusive and has once lawfully attached it cannot be ousted by subsequent events or facts arising in the cause, but the court may proceed to final judgment unless some constitution or statute operates to divest that particular court of jurisdiction.

Curry v. McCaffery (1913), 47 Mont. 191, 196, 131 P. 673, 675.

6

The court's temporary custody order of April 22, 1991, was **not** the final judgment of the case. It was no more than an interlocutory order which could be amended, modified, or vacated until a final resolution of the case. The child abuse and neglect statutes do not make provisions for the expiration of custody in the state or the loss of jurisdiction by the court, other than by a finding by the court that the children are not in danger of being abused or neglected and vacating of any order made pursuant to § 41-3-403, MCA. Section 41-3-404(4)(a), MCA. We hold that the District Court did not lose jurisdiction of the case when the temporary custody order expired.

Affirmed.

_____
                Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

7

September 16, 1993

CERTIFICATE  OF  SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

James L. Vogel
Attorney at Law
P. 0. Box 525
Hardin, MT 59034

Natasha J. Morton
Attorney at Law
P. 0. Box 429
Hardin, MT 59034

Joe A. Rodriguez
Attorney at Law
P. 0. Box 820
Lame Deer, MT 59043

Hon. Joseph P. Mazurek, Attorney General
Deanne L. Sandhohn, Assistant
215 N. Sanders, Justice Building
Helena, MT 59620

James E. Torske
Special Deputy County Attorney
P. 0. Drawer F
Hardin, MT 59034


ED  SMITH
CLERK OF  THE SUPREME COURT
STATE OF MONTANA

BY: _P. Stark_
Deputy