FILED

June 28 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0472

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 153

RUSSELL LEVENS and MELISSA LEVENS,

        Plaintiffs and Appellants,

   v.

AL BALLARD and ECOSAFE GOLD RECOVERY, LLC,

        Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 05-612
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

       Holly Jo Franz; Franz & Driscoll, PLLP, Helena, Montana

       For Appellees:

       Gregory W. Duncan; Attorney at Law, Helena, Montana

Submitted on Briefs:  May 18, 2011

Decided:  June 28, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Russell and Melissa Levens appeal from the District Court's Memorandum and Order on Motion for Contempt, filed July 31, 2009, and the Order Granting Attorney Fees filed September 1, 2010. We reverse.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Levens and Ballard own adjoining properties in Grizzly Gulch, a mountainous area south of Helena, Montana. Levens live on their property which lies south of Ballard's property, where he operates a gold mine. Ballard's gold mine is an open pit dug with heavy equipment alongside the county road in Grizzly Gulch, and near or to the boundary with Levens' property on the south end. Ballard digs earth and rocks ("material") out of the pit and processes it to extract gold. Ballard can expand his pit only to a limited surface area because of the country road, Levens' property, and his five-acre limit as a "small miner" under State law (§§ 82-4-303(16) and -305, MCA). One of the consequences of this is that Ballard tends to dig down rather than "out" to recover material for processing. A consequence of digging down is that the steep sides of the pit tend to collapse into the pit. Ballard removes this material for gold processing.

¶3 In 2003, Lewis & Clark County allowed Ballard to relocate the county road that had formerly separated the Levens and Ballard tracts. Levens and Ballard could not agree upon the location of the boundaries of their properties, but in August 2005 they entered a written agreement defining their boundary according to a draft survey completed the prior year. One provision of the agreement moved a portion of Levens'

2

property boundary 30 feet to the south, giving Ballard title to a 30-foot strip between the two properties.

¶4     In return, Ballard agreed "that to protect the lateral support of Levens' property, no excavating will occur within 30 feet of Levens' real property." The parties also agreed to share the cost of a new survey and to execute all documents required to accomplish the boundary relocation. Disputes quickly arose after Ballard occupied the area between the two properties and refused to sign the new certificate of survey.

¶5     Levens brought an action against Ballard to enforce the agreement and for an injunction. The evidence in that proceeding showed that Ballard refused to sign the new survey and had "bladed a road," drilled a water well, and placed heavy equipment on Levens' property or property that would belong to Levens under the agreement. In October, 2005, the District Court enjoined Ballard from "excavating, mining, bull dozing . . . or in any manner changing the disputed property" or trespassing on Levens' property. In April, 2006, the District Court issued a Memorandum and Order determining that the agreement was "clear and unambiguous" and granting Levens' motion for summary judgment. In a judgment filed April 24, 2006, the District Court ordered that the August, 2005 agreement between Levens and Ballard was valid and enforceable; that Ballard was required to sign the new certificate of survey; that Ballard was required to execute all documents necessary to accomplish the boundary relocation; and that Ballard was "permanently enjoined from excavating within 30 feet of the property boundary of the Plaintiffs, Russell and Melissa Levens."

3

¶6     Less than a month later, in May, 2006, Ballard moved the District Court to "clarify" the judgment because another dispute had arisen over the well that Ballard had drilled on land belonging to Levens. Ballard wanted access to the well and the right to use the road he bladed across the property he recently acquired from Levens. Ballard's motion argued that the intent of the 2005 agreement was that he "not mine within thirty feet of the [Levens] property therefore insuring lateral support." Ballard contended that the agreement "only addresses excavation *as it affects lateral support*." (Emphasis added.) He asked the District Court to order that the prior judgment did not prevent him from drilling a new water well or excavating a road on the 30-foot strip that he now owned.

¶7     Ballard's attorney filed an affidavit in support of the motion, asserting that the intent of the 2005 agreement with Levens was "meant to include only *the loss of lateral support* through Mr. Ballard's actual excavation, mining, digging, or enlarging the pit." (Emphasis added.) A draft order attached to Ballard's motion provided that the intent of the 2005 agreement was to prohibit "digging in the pit in such a manner that it *enlarges the pit to within 30 feet of the property line*, thereby diminishing the lateral support to the Levens Property." (Emphasis added.) Ballard also filed an affidavit in support of that motion in which he requested that the "excavation" covered by the judgment be declared to be "strictly for the purpose of lateral support" for Levens' property.

¶8     In August, 2006, the District Court denied Ballard's motion for clarification, holding again that the 2005 agreement "is clear and unambiguous and prohibits *any type of excavating* within 30 feet of the property boundary." (Emphasis added.)

4

¶9 In June, 2009, Levens filed a motion for contempt against Ballard for failure to abide by the April, 2006 judgment entered against him. The Hon. Tom Honzel presided over the case prior to this time, but he had retired by the time the June, 2009 motion was filed and the Hon. Kathy Seeley assumed jurisdiction. Levens sought an order requiring Ballard to "fully and adequately remediate the excavation, sloughing, and ground cracking that has occurred within 30 feet" of their property and to compensate them for all damages incurred as a result of Ballard's violation of the permanent injunction in the judgment. In July, 2009 the District Court held two days of evidentiary hearing on Levens' motion and conducted a site visit. In July, 2009, the District Court denied Levens' motion for contempt, finding that while there had been "slumping of material along the edge" of Ballard's pit, he had not actually excavated within 30 feet of the property line. In September 2010, the District Court entered an order awarding attorney fees to Ballard under the 2005 agreement.

## STANDARD OF REVIEW

¶10 Review of a district court's interpretation of a judgment presents an issue of law, and this Court reviews the district court's interpretation to determine whether it is correct. *Harland v. Anderson Ranch Co.*, 2004 MT 132, ¶ 20, 321 Mont. 338, 92 P. 3d 1160.

## DISCUSSION

¶11 *Issue: Did the District Court err in denying Levens' motion to have Ballard held in contempt for violation of the prior judgment?* Levens filed a motion with the District Court requesting an order holding Ballard in contempt of court pursuant to § 3-1-501(1)(e), MCA. That section provides that disobedience of any lawful judgment of the

5

court constitutes contempt of court. Levens' motion was based upon their contention that Ballard violated the District Court's April 24, 2006 judgment, and particularly the portion that permanently enjoined Ballard from excavating within 30 feet of their property line. Levens further sought the District Court's order to require Ballard to "fully and adequately remediate the excavation, sloughing and ground cracking" that occurred within 30 feet of their property line, and sought compensation for all damages they had incurred as a result of Ballard's actions.

¶12 On July 31, 2009, following a hearing and a site visit, the District Court entered an order denying the motion for contempt, finding that the issue was resolved by the language of the 2005 agreement between Levens and Ballard; particularly the provision that prohibited Ballard from "excavating" within 30 feet of Levens' property line. The District Court found that "while there has been and will be slumping of material along the edge of the area where excavating has occurred, there has been no excavating within 30 feet of the property line."

¶13 The District Court's order can only be fully understood in the context of the testimony presented at the hearing. Ballard's contention at the hearing, and now on appeal, is that the word "excavating" as used in the 2005 agreement with Levens and in the District Court's 2006 judgment, only prohibits him from moving any portion of his excavating equipment into the 30-foot buffer strip in front of Levens' property. Ballard, his expert Earl Griffith and his employee Gerry Kelly testified that while they did not measure or survey the pit, in their estimation no part of Ballard's excavating equipment intruded into the 30-foot strip. Ballard's contention is that he can dig as deeply into his

6

pit as he wants and allow the pit walls to collapse as long as no portion of his equipment crosses the plane of the 30-foot boundary in front of Levens' property.

¶14 According to Ballard's expert Griffith, the natural and expected consequence of Ballard's excavation of his pit up to the edge of the 30-foot boundary is that the "material" (earth and rocks) above the steep headwall slumps (i.e., slides or falls) into the pit. Griffith testified that the slumping into the pit will continue as long as the wall of the pit fails to provide sufficient lateral support to keep it in place. This slumping has progressed as a result of Ballard's excavation to the point that the earth from Levens' side of the 30-foot boundary has begun sliding into Ballard's pit. This is the "slumping" referred to in the District Court's order. Both Levens and Ballard agree that this has occurred.

¶15 The loss of lateral support caused by Ballard's steep-sided excavation has also caused cracking in the remaining earth surface within the 30-foot strip. According to Ballard's expert Griffith, this is an indication that the cracked earth will eventually also slide into the pit. At the time of the hearing in 2009, the cracks in the earth had progressed across the 30-foot strip and, according to Griffith, were already within a few feet of Levens' property boundary.

¶16 Griffith further testified that as Ballard continues to excavate deeper into the pit and to remove the material that slumps into it from the 30-foot strip bordering Levens' property, the 30-foot strip of earth itself will eventually disappear into the pit, as the earth will no longer hold together and seeks its "angle of repose." That is the angle at which the loose earth will remain in place without further sliding or slumping. Griffith opined

7

that Ballard should be allowed to excavate from his pit until the earth from the entire 30-foot strip slumps into the pit.

¶17 Ballard's contention in the District Court and on appeal is that there is a legally significant difference between "excavating" and "excavation." He contends that when he sends heavy equipment into the pit and moves earth as described by Griffith, he is "excavating." Ballard argues that the result of excavating is an "excavation" and that neither the 2005 agreement nor the 2006 judgment prohibit him from creating an excavation. Ballard contends that if his excavating causes or results in an excavation that extends into the 30-foot buffer zone with Levens, then that is only a natural geologic event and is not prohibited by the judgment.

¶18 The District Court apparently agreed with Ballard's contention that there were no restrictions on the size of his excavation (the outer limits of the pit) as long as no part of his heavy equipment came within 30 feet of Levens' property line. The District Court was in error because it construed the judgment too narrowly.

¶19 First, it is clear that an express primary purpose of the 2005 Levens-Ballard agreement was to secure for Levens a buffer of earth 30 feet wide between them and Ballard's pit to provide "lateral support" for Levens' property. In other words, the purpose was to keep Ballard's pit far enough away from Levens' property line to insure that Levens' property did not fall into Ballard's pit. Therefore, the word "excavating" in the agreement and in the judgment must be read in the context of insuring lateral support for Levens' property. Allowing Ballard to excavate in his pit so that the earth from the 30-foot buffer strip falls into the pit does not insure that Levens will have lateral support.

¶20    Further, it is clear that in 2006 Ballard similarly understood that the judgment's injunction against his excavating within 30 feet of Levens' property was meant to insure that the 30-foot buffer strip remain intact. Shortly after the entry of the judgment Ballard wanted to use the buffer strip for a graded road and a water well. He moved to clarify or amend the judgment, contending that the 2005 agreement was only intended to prevent "digging in the pit in such a manner that it enlarges the pit to within 30 feet of the property line, thereby diminishing the lateral support for the Levens Property." Ballard's attorney submitted an affidavit in support of the motion, asserting that he had negotiated the 2005 agreement and that it was "meant to include only the loss of lateral support through Mr. Ballard's actual excavation, mining, digging, or enlarging the pit."

¶21    This recognition of the importance of lateral support to the Levens, and that the agreement prevented "enlarging" the pit are directly at odds with Ballard's position in the present appeal. Given the express language in the 2005 agreement linking lateral support for the Levens' property to the 30-foot buffer strip, it is clear that the intent of the 2006 judgment was to prohibit Ballard from excavating in such a way that the pit was extended into the strip. This was expressly Ballard's understanding of the judgment in 2006 and is consistent with the record.

¶22    Second, we find no justification in law or in the facts of this case to make the distinction between "excavation" and "excavating" that Ballard now promotes. Excavating naturally and necessarily creates an excavation. Ballard provides no substantial support for his contention that, with regard to his relationship with Levens, he can excavate without regard to the effects of the resulting excavation. Such an

9

interpretation would effectively nullify the express recognition in the 2005 agreement (and in Ballard's 2006 court filings) of the importance of maintaining lateral support for the edge of Levens' property. There is no support in the record for Ballard's position in the current proceeding that he can, consistently with the 2005 agreement and 2006 judgment, cause the earth in front of Levens' property to fall away into his pit right up to the property line.

¶23 Therefore, we conclude that the 2006 judgment in this case must be construed to prevent Ballard from excavating in his pit in such a way that the pit excavation intrudes, by sloughing, slumping, subsidence or otherwise, into the 30-foot buffer strip at the edge of Levens' property. Levens are entitled under the agreement and the judgment to have the 30-foot buffer strip remain intact.

¶24 The District Court's orders denying the motion for contempt and awarding attorney fees to Ballard are reversed. This case is remanded to the District Court to conduct such other proceedings, and enter such other orders as may be required to address Levens' motion for contempt, consistent with this opinion.

/S/ MIKE McGRATH

We concur:

/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ JAMES C. NELSON

10