Justice Ingrid Gustafson delivered the Opinion of the Court.
*1110 ***239 ¶1Petitioner/Appellant/Cross-Appellee Kayle Jo Hardman, f/k/a Kayle Jo Moore (Kayle) and Respondent/Appellee/Cross-Appellant Shannon Moore (Shannon) cross-appeal the Combined Order on Motion for Lien and Counter Motion to Vacate the Decree of Dissolution issued ***240 by the Montana Eleventh Judicial District Court, Flathead County, on July 2, 2018.
¶2 We restate the issues on appeal as follows:
1. Did the District Court have jurisdiction to divide any portion of the proceeds from Shannon's California personal injury lawsuit?
2. Did the District Court err when it denied Kayle's request for half of the proceeds from Shannon's California personal injury lawsuit?
¶3 We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
¶4 In 2005, Kayle and Shannon married in California. In 2011, Shannon and a co-worker were injured while working alongside a road in Humboldt County, California, at a jobsite supervised by the California Department of Transportation (Caltrans). After the accident, Shannon and his co-worker filed a lawsuit against Caltrans. In 2013, the parties separated and Kayle moved to Montana. After living in Montana for 100 days, Kayle filed a Petition for Dissolution (Petition) on September 25, 2013. Attached to the Petition, as Exhibit A, is a document which states, in full:
A lawsuit is pending in the State of California, due to an on the job accident involving the Respondent in August 2011. The accident left the Respondent with a disability of Post Traumatic Stress Disorder (P.T.S.D). A settlement is expected in favor of the Respondent.
The Petitioner request all debts of the parties will be paid off with the proceeds of the settlement. This includes personal loans from Patti Hardman, Quita Moore, Judy Moore, Ed and Carolyn Gellner and the American Express credit card. All of which were used to help with living expenses after the [Respondent's] disability took place. Petitioner requests the residual proceeds are to be split 50/50 between the Respondent and Petitioner.
¶5 On March 10, 2014, Kayle filed an Amended Petition for Dissolution (Amended Petition). The Amended Petition contains an identical Exhibit A to that found attached to the Petition. Both the Petition and Amended Petition were served on Shannon in California. Shannon did not appear or otherwise respond to either the Petition or Amended Petition, and the Clerk of Court issued an Entry of Default on May 5, 2014. The District Court held a hearing on the Amended Petition on May 20, 2014, noted that Shannon's default had previously been entered, and determined Kayle's proposed distribution of property and debts to be fair and equitable. The District Court issued its Findings of Fact, Conclusions of Law and Final Decree of Dissolution ***241 (Decree) on May 20, 2014. The District Court's Decree includes an identical Exhibit A as those found on both the Petition and Amended Petition. Kayle sent the Shannon a Notice of Entry of Decree on May 20, 2014.
¶6 On February 1, 2017, Shannon received a jury verdict for medical expenses, lost earnings, and noneconomic damages in the amount of $2,727,587.11 in his personal injury lawsuit against Caltrans. After Kayle learned of the verdict, she filed a Motion for Contempt, to Enforce Decree, and for Order to Show Cause on March 28, 2017. Kayle sought to be awarded half of the proceeds of Shannon's California personal injury lawsuit under the Decree. On May 8, 2017, attorney Peter F. Carroll filed a Notice of Special Appearance and Motion to Dismiss on behalf of Shannon. On May 9, 2017, the District Court held a hearing on the motion for contempt and denied it as premature. On July 6, *1111 2017, attorney Carroll filed a Notice of Withdrawal and Notice of Change of Address, in which he withdrew from representing Shannon and informed the parties that Shannon had moved to Tennessee.
¶7 On July 13, 2017, counsel for Kayle filed a Uniform District Court Rule 10 Notice, informing Shannon that he had 21 days to appoint new counsel or appear in person, as well as informing Shannon that Kayle had, simultaneously with filing the Rule 10 notice, filed a Motion for Lien and Brief in Support. On August 9, 2017, the District Court issued an Order Establishing Lien, which, in relevant part, granted Kayle 50% of the proceeds from Shannon's personal injury lawsuit.
¶8 On November 14, 2017, attorney Carroll again appeared on behalf of Shannon and filed a Motion to Vacate Judgment. After the parties briefed this motion, the District Court held a hearing on April 25, 2018. Following the hearing, the District Court issued an Order which vacated its August 9, 2017 Order Establishing Lien because it was prematurely issued and ordering Shannon to respond to the July 13, 2017 Motion for Lien. After an extension, Shannon filed his Response in Opposition to Motion for Order Establishing Judgment Lien and Counter Motion to Vacate the Decree of Dissolution of Marriage in Whole or Part on May 15, 2018. After the parties briefed both motions, the District Court issued its Combined Order on Motion for Lien and Counter Motion to Vacate the Decree of Dissolution on July 2, 2018. The parties cross-appeal.
STANDARD OF REVIEW
¶9 Whether a court has jurisdiction is a legal conclusion, which we review de novo.
***242 Capital One, NA v. Guthrie , 2017 MT 75, ¶ 10, 387 Mont. 147, 392 P.3d 158 (citing Pinnow v. Mont. State Fund , 2007 MT 332, ¶ 13, 340 Mont. 217, 172 P.3d 1273 ).
¶10 Review of a district court's interpretation of a judgment presents an issue of law, and we review the district court's interpretation to determine whether it is correct. Levens v. Ballard , 2011 MT 153, ¶ 10, 361 Mont. 108, 255 P.3d 195 (citing Harland v. Anderson Ranch Co. , 2004 MT 132, ¶ 20, 321 Mont. 338, 92 P.3d 1160 ).
¶11 A district court is vested with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances. In re Funk , 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39 (citing § 40-4-202, MCA ). We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct. Absent clearly erroneous findings, we will affirm a district court's division of property unless we identify an abuse of discretion. Funk , ¶ 6. As we have stated previously, each case must be examined individually, with an eye to its unique circumstances. In re Marriage of Spawn , 2011 MT 284, ¶ 9, 362 Mont. 457, 269 P.3d 887.
DISCUSSION
¶12 1. Did the District Court have jurisdiction to divide any portion of the proceeds from Shannon's California personal injury lawsuit?
¶13 In the Decree, the District Court awarded numerous personal debts solely to Shannon. These debts included a total of $13,700 in personal loans from friends and family incurred after Shannon's accident and disability. In addition, the District Court included a special provision which stated:
Husband shall pay the total of [$7,088.85] to Wife which represents 1/2 of total owed to Bank of the West, in monthly increments of $300.00 until paid in full beginning April 1, 2014. If this debt is unpaid at time of [settlement] the Respondent must pay it out of his proceeds.
Shannon argued that the District Court did not have jurisdiction to divide any portion of his California personal injury lawsuit proceeds.
¶14 A district court has broad discretion to apportion a marital estate in a manner equitable to each party under the circumstances. In re Marriage of Parker , 2013 MT 194, ¶ 46, 371 Mont. 74, 305 P.3d 816. In making apportionment, a district court must consider:
the duration of the marriage and prior marriage of either party, the age, health, *1112 station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and ***243 needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of capital assets and income.
Section 40-4-202(1), MCA.
¶15 In this case, after Shannon's default, the District Court divided the property and debts of the parties as requested by Kayle. Because Kayle lived in Montana for more than 90 days prior to filing the action for dissolution, the District Court had jurisdiction to hear the dissolution action. Section 40-4-104(1), MCA ; see also § 40-4-105(1)(c), MCA. "Jurisdiction to hear the divorce gives jurisdiction over all the rest of the problems of custody, support and division of property." Wilson v. Wilson , 186 Mont. 290, 296, 607 P.2d 539, 542 (1980).
¶16 The District Court had jurisdiction to hear the dissolution action and therefore also had jurisdiction to divide the parties' marital debts and property. The District Court awarded all the personal loan debts incurred after Shannon's injury solely to Shannon, along with half of the parties' debt to Bank of the West. It further included a provision that Shannon would be required to pay these debts out of the proceeds of his California lawsuit if Shannon had not paid these debts by the time that lawsuit was completed. We have previously held that it is not an abuse of discretion for a district court to apportion proceeds from a pending lawsuit in a dissolution proceeding. In re Marriage of Hodge , 2003 MT 146, ¶ 16, 316 Mont. 194, 69 P.3d 1192. Under the unique circumstances of this case, the District Court had both the jurisdiction and the discretion to apportion a part of Shannon's lawsuit proceeds in the conditional event that Shannon did not pay his marital debts. This provision of the Decree is only relevant because Shannon has not yet paid those debts. Indeed, Shannon has still not received any proceeds from his lawsuit and it is entirely possible that this condition is never met because he could simply pay off his marital debts at any point. The District Court did not abuse its discretion in including the special provision requiring Shannon to pay his marital debts out of his lawsuit proceeds if those debts were still unpaid at the time of settlement.
¶17 Relatedly, Shannon argues that the District Court did not have jurisdiction to issue a lien on his lawsuit proceeds. The District Court, in its Combined Order on Motion for Lien and Counter Motion to Vacate the Decree of Dissolution, granted Kayle a lien on Shannon's lawsuit proceeds in the amount of $7,088.85. At the April 25, 2018 hearing both the District Court and counsel for Kayle agreed that an additional separate lien in Montana was not necessary as Kayle could ***244 simply take the Decree to California and seek to have it enforced as a foreign judgment.[1] The lien issued by the District Court in this case is essentially superfluous then, as both the Decree and the lien award Kayle the same amount and require the funds be paid by any settlement proceeds only if that amount is not paid before such proceeds, if any, are distributed. The status of the parties and the amount of money due to Kayle are fundamentally the same regardless of the lien-the only difference being that Kayle could additionally seek to have the lien enforced as a foreign judgment. The amount of money due to her is unchanged. As we have determined that the District Court had jurisdiction to divide a portion of the proceeds from Shannon's California personal injury lawsuit in the Decree, the District Court's issuance of a lien which may be enforced only by filing in California added nothing to Kayle's rights under the Decree.
¶18 2. Did the District Court err when it denied Kayle's request for half of the proceeds from Shannon's California personal injury lawsuit?
¶19 The District Court included Exhibit A as an attachment to its Decree. Exhibit A states, in relevant part, that "The Petitioner request all debts of the parties will be paid off with the proceeds of the settlement. ... Petitioner requests the residual *1113 proceeds are to be split 50/50 between the Respondent and Petitioner." Kayle argues that the inclusion of this language means that she is entitled to half of the proceeds from Shannon's California personal injury lawsuit. The District Court found, after reviewing the record, that neither the plain language of the Decree nor the statements of the District Court at the dissolution hearing support Kayle's contention. We agree.
¶20 "While we generally encourage trial courts to make accommodations for parties choosing to represent themselves ... [a]ny latitude given to self-represented litigants cannot be so wide as to prejudice the other party." Cox v. Magers , 2018 MT 21, ¶ 15, 390 Mont. 224, 411 P.3d 1271 (internal citation and quotations omitted).
¶21 From the time Kayle first filed for dissolution in 2013 and through the time the District Court issued its Decree in 2014, Kayle was unrepresented by counsel and proceeding pro se. Shannon did not appear in the action at all during this period and was defaulted. Kayle essentially argues that her language requesting half of the proceeds from Shannon's California personal injury lawsuit is imprecise, but its intent was clear. Kayle asserts that not awarding her half of the ***245 proceeds would be elevating form over substance. This contention is incorrect. The plain language of Exhibit A-identical in the Petition, Amended Petition, and Decree-includes a request that the debts of the parties be paid from the proceeds of Shannon's anticipated settlement and a separate request for Kayle to receive half of the proceeds from Shannon's anticipated settlement. The District Court, in the Decree, partially adopted Kayle's first request with its special provision requiring Shannon to pay the $7,088.85 debt of out the lawsuit proceeds if that debt remained unpaid at the time of settlement. It did not adopt Kayle's second request for half of Shannon's personal injury lawsuit proceeds.
¶22 At the May 20, 2014 dissolution hearing, the District Court did not ask Kayle any questions about her request for half of Shannon's potential lawsuit proceeds. While Kayle contends this demonstrates the District Court's intent to grant her request for half of those proceeds, the District Court did not specifically grant this request in its Decree. The District Court included Exhibit A in the Decree and specifically imposed a requirement for Shannon to pay his unpaid debts out of his lawsuit proceeds. If the District Court intended to specifically award Kayle what she requested-half of Shannon's lawsuit proceeds for herself-it could have done so. It did not. Kayle made a request, and the District Court, by not adopting Kayle's request, implicitly denied it. While pro se litigants are awarded latitude, that latitude cannot be so great as to prejudice other parties. Cox , ¶ 15. Kayle asked the District Court, and this Court on appeal, to award her nearly $1.4 million of Shannon's award for future lost wages, medical bills, and noneconomic damages after he was disabled in an accident at work. The District Court is required to divide the marital estate equitably. Funk , ¶ 6. In this case, for this Court to transform Kayle's request to an award, when the District Court had the opportunity to specifically make an award in the Decree but did not do so, would do great prejudice to Shannon and would be extremely inequitable. Shannon is the party who was disabled, and Shannon is the party who will live with that disability for the rest of his life. Under the circumstances of this marriage, in no sense could Kayle's interpretation of the Decree-awarding her nearly $1.4 million from the amount meant to compensate Shannon for his lifelong disability-be considered an equitable distribution of the marital estate.
¶23 The District Court's interpretation of its Decree is an issue of law. Levens , ¶ 10. The District Court correctly denied Kayle's request for half of the proceeds from Shannon's California personal injury lawsuit.
***246 CONCLUSION
¶24 The District Court did not err when it determined that it had jurisdiction to impose a special provision related to payments from the proceeds of Shannon's California personal injury lawsuit or when it denied Kayle's request for half of the proceeds from Shannon's California personal injury lawsuit.
¶25 Affirmed.
We concur:
MIKE McGRATH, C.J.
DIRK M. SANDEFUR, J.
BETH BAKER, J.
JIM RICE, J.

Kayle's attorney indicated she believed Kayle's California counsel had already filed the Decree in California and was attempting to enforce it as a foreign judgment.