DA 09-0040

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 431

RONALD G. DESCHAMPS,

      Respondent and Appellant,

    v.

KIM W. DESCHAMPS,

      Petitioner and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR 06-463
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Michael Sol and Terry L. Wolfe; Sol & Wolfe Law Firm, PLLP;
Missoula, Montana

      For Appellee:

            Patrick G. Sandefeur; Law Office of Patrick G. Sandefeur;
Missoula, Montana

Submitted on Briefs:  November 12, 2009

Decided:  December 22, 2009

Filed:

_____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Appellant Ronald G. Deschamps appeals from the marital dissolution order of the Fourth Judicial District Court, in which the District Court interpreted a prenuptial agreement and distributed the marital estate.  We affirm.

## ISSUES

¶2    1.  Did the District Court err in interpreting the parties' prenuptial agreement?

¶3    2.  Did the District Court err by dividing Ronald's pension benefits as part of the marital estate?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    Ronald and Kim Deschamps were married September 27, 1980, in Missoula County, Montana.  Ronald insisted on a prenuptial agreement, given his prior divorces and the 18-year disparity in his and Kim's ages.  Before their marriage, Ronald and Kim executed a prenuptial agreement, entitled "Antenuptial Agreement" (Agreement), prepared by Ronald's attorney.  The Agreement provided, in pertinent part, that:

> 2.  Prospective husband is the legal owner of real property described in: Mountain Meadows #1, Lot 16.  In the event there is a dissolution of this marriage the prospective husband is to receive the following:  Mountain Meadows #1, Lot 16 and the family home and all buildings situated on said property.
>
> 3.  Prospective husband and prospective wife desire to retain all property that they presently own as separate property, after solemnization of their marriage.

¶5    When Ronald and Kim married, Mountain Meadows was a bare, unimproved parcel containing a 1962 Nashua 12-foot by 60-foot trailer with a small add-on.  The

2

property also contained a small storage shed next to the trailer, a covered chicken house, and a small pumphouse to draw water from the nearby Six-Mile Creek. Mountain Meadows had no lawn, landscaping, trees, or other improvements, and was worth approximately $19,230.

¶6    During their twenty-seven (27) year marriage, Ronald and Kim greatly improved Mountain Meadows, and Kim herself made many of the improvements. Kim did most of the raking, rock-picking, and dirt work to start a lawn around the home. She likewise repainted the pumphouse and storage sheds, and painted the trim on the house. Kim painted, wallpapered, and re-carpeted the interior of the home using her own money from her job and from selling her skis. Kim contributed money to purchase new furniture over the years, and put in flower beds and planted trees around the yard.

¶7    In 1984, Ronald and Kim borrowed $20,000, later repaid from joint funds, to build a large, two-story barn that is heated, plumbed, and electrified. Kim hand-oiled the wood inside the barn, and stained the exterior with the help of her father and her daughter from a previous marriage, Gina. Ronald and Kim also built a 75-foot by 75-foot riding arena between the house and the barn. Kim did the disking up of the land, and hand-picked the rocks from the arena area before sand was hauled in and spread.

¶8    In 1989, the parties replaced the trailer home with a 60-foot by 24-foot modular home. Kim, Ronald, and Kim's father dug the footings for the new home's foundation by hand. Kim decorated and improved the interior of the home. Kim and Gina raised Arabian horses during the 1980's, and did almost all of the work required to maintain the

3

property for the horses. In 1992, the parties re-fenced the property to accommodate raising steers. Kim's father helped take down the old fencing and install the new rolled-wire fence, which he purchased. In 1994, Ronald and Kim put a new roof, windows, and siding on the home. Kim's father helped almost every day of that effort. They also built a large covered deck on the home. Kim stained the house and the new deck.

¶9 While Ronald helped, Kim and Gina did most of the yard work. Kim spent substantial time picking weeds, tending to the lawn and landscaping. In 2000, Kim re-landscaped the back yard, installing additional fencing, a waterfall, a pond, rock work and plants. In sum, Kim made substantial contributions to Mountain Meadows, both financially and physically.

¶10 In July, 2006, Ronald and Kim separated, and filed the petition for dissolution shortly thereafter. The District Court heard the case on March 26 and 27, 2008. After hearing testimony from the parties and making specific findings of fact, the District Court concluded that Kim's equitable entitlement of the marital estate included half the increased value of Mountain Meadows and a portion of Ronald's retirement pension benefits. The District Court filed its Findings of Fact, Conclusions of Law, and Decree of Dissolution on September 26, 2008, and a subsequent Order of Correction on September 30, 2008. After the District Court denied his subsequent Motion to Alter or Amend the judgment, Ronald filed this appeal.

**STANDARD OF REVIEW**

¶11  Section 40-4-202, MCA (2007), governs the distribution of a marital estate. The statute vests a district court with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances. *In re Marriage of Bartsch*, 2007 MT 136, ¶ 9, 337 Mont. 386, 162 P.3d 72 (citing *In re Marriage of Swanson*, 2004 MT 124, ¶ 12, 321 Mont. 250, 90 P.3d 418). We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Monroe v. Marsden*, 2009 MT 137, ¶ 20, 350 Mont. 327, 207 P.3d 320 (citing *In re Estate of Bradshaw*, 2001 MT 92, ¶ 11, 305 Mont. 178, 24 P.3d 211). We review the evidence in the light most favorable to the prevailing party, acknowledging that the credibility and weight to be assigned to the witnesses are properly for the district court to determine. *Monroe*, ¶ 20 (citing *In re Guardianship of Mowrer*, 1999 MT 73, ¶ 36, 294 Mont. 35, 979 P.2d 156). The court's findings are clearly erroneous if they are not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if a review of the record convinces us that the court made a mistake. *In re Marriage of Harris*, 2006 MT 63, ¶ 16, 331 Mont. 368, 132 P.3d 502 (citing *In re Marriage of Payer*, 2005 MT 89, ¶ 9, 326 Mont. 459, 110 P.3d 460).

¶12  "Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion." *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151 (citing *Payer*,

¶ 9). The district court will have abused its discretion if it acted arbitrarily without conscientious judgment, or exceeded the bounds of reason, resulting in substantial injustice. *Crilly*, ¶ 10 (citing *In re Marriage of Kotecki*, 2000 MT 254, ¶ 9, 301 Mont. 460, 10 P.3d 828).

## DISCUSSION

¶13    **1. Did the District Court err in interpreting the parties' prenuptial agreement?**

¶14    The District Court interpreted the prenuptial Agreement as only governing the parties' respective property at the time of the Agreement, and that the Agreement was silent as to future improvements, contributions, or appreciation. As such, the District Court awarded Ronald the property, but ordered him to pay Kim half of Mountain Meadow's increased value based upon her physical and financial contributions to the land and the home. On appeal, Ronald argues that this interpretation of the Agreement and the distribution to Kim are abuses of the District Court's discretion. Ronald contends that the Agreement clearly expressed the intent of the parties, that Ronald would receive all property upon dissolution of the marriage, regardless of Kim's contributions.

¶15    Montana law requires that "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect if it can be done without violating the intention of the parties." Section 28-3-201, MCA. When the parties reduce the contract to writing, the district court should ascertain the intention of the parties from the writing alone, if possible. Section 28-3-303, MCA; *SVKV, L.L.C. v. Harding*, 2006 MT 297, ¶ 43, 334 Mont. 395, 148 P.3d 584 (citing

6

*Wurl v. Polson Sch. Dist. No. 23*, 2006 MT 8, ¶ 16, 330 Mont. 282, 127 P.3d 436). In doing so, "[t]he whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA. The language of the contract shall govern its interpretation, provided that the language is clear and explicit, and does not involve an absurdity. Section 28-3-401, MCA. Finally, the district court must determine the mutual intention of the parties at the time of contracting, § 28-3-301, MCA, and any uncertainties are resolved most strongly against the party who caused the uncertainty. Section 28-3-206, MCA.

¶16 The District Court found that the Agreement was "silent with respect to increases in value of the pre-marital property," and therefore "all such increases are subject to equitable distribution pursuant to Section 40-4-202, MCA." The record, particularly the Agreement itself, substantially supports the District Court's conclusion that the Agreement did not provide for distribution of the increased value of the property. The third operative clause of the agreement expressly provides that the "[p]rospective husband and prospective wife desire to retain all property *that they presently own* as separate property, after solemnization of their marriage." (Emphasis added.) This clause is an expression of the parties' intentions. The clause supports and informs the preceding clause, that Ronald owned Mountain Meadows and the buildings upon the land prior to the marriage, and would keep that property and those buildings upon dissolution of the marriage. Nothing in the Agreement provides that the increase in value of Mountain Meadows stemming from Kim's substantial physical and financial efforts over the

7

27-year marriage is to be distributed to Ronald upon dissolution of the marriage. Such an interpretation would result in an absurdity, and be unconscionable, because of the failure of the Agreement to fully apprise Kim of this intention, and because of the effect such a construction would have on the expectations of the parties during their marriage. Kim testified on both direct and cross-examination that she understood the Agreement to mean that, upon dissolution, each party would receive the property they owned at the time of the marriage. Substantial credible evidence supports the District Court's findings and interpretation of the contract. Finally, Ronald and his attorney drafted the Agreement and, thus, any uncertainties are construed against Ronald.

¶17 Because the Agreement did not provide for the distribution of the increased value of Mountain Meadows, the District Court properly distributed the increased value equitably between the parties, pursuant to § 40-4-202, MCA. This statute vests district courts with broad discretion to apportion the marital estate equitably to each party under the circumstances, regardless of title to the property. *Bartsch*, ¶ 9 (citations omitted); § 40-4-202(1), MCA. We have construed § 40-4-202, MCA, "to mean that assets belonging to a spouse prior to marriage, or acquired by gift during the marriage, are not a part of the marital estate unless the non-acquiring spouse contributed to the preservation, maintenance, or increase in value of that property." *Bartsch*, ¶ 21 (quoting *In re Marriage of Rolf*, 2000 MT 361, ¶ 46, 303 Mont. 349, 16 P.3d 345). As such, the District Court awarded half of the increased value of Mountain Meadows to compensate Kim for the considerable physical and financial efforts she made to the property over the 27-year

8

marriage. Her efforts were a substantial contribution to the increase in the value of the property. There is substantial credible evidence in the record to support the District Court's interpretation of the contract, and marital property distribution award. Ronald's arguments as to contract ambiguity and property law are accordingly without merit.

¶18 **2. Did the District Court err by dividing Ronald's pension benefits as part of the marital estate?**

¶19 Ronald makes a brief argument that the District Court erred in dividing his pension benefits, because he will be left with insufficient income to meet his ongoing medical and living expenses. In awarding Kim a portion of Ronald's pension benefits, the District Court noted that "Kim is entitled, and Ron has not presented evidence or argument in opposition to Kim's request in this regard, to a share of Ron's employer retirement benefits earned during the marriage utilizing the *Rolfe* formula." *Rolfe v. Rolfe*, 234 Mont. 294, 766 P.2d 223 (1988). In light of Ron's failure to present evidence or argument in opposition to Kim's request, we cannot second guess the District Court's determination to distribute a portion of his retirement pension benefits to her. "It is well established in this state that retirement benefits are a part of the marital estate," *Rolfe*, 234 Mont. at 296, 766 P.2d at 225 (citation omitted), and district courts are given "substantial discretion" to devise an equitable distribution. *Rolfe*, 234 Mont. at 300, 766 P.2d at 227 (citation omitted). As such, the District Court did not abuse its discretion by awarding Kim an equitable portion of Ronald's retirement pension benefits.

**CONCLUSION**

¶20    For the foregoing reasons, we affirm the District Court.


                                                /S/ JIM RICE


We concur:


/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART