FILED

March 8 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0381

DA 15-0381

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 51

IN RE THE MARRIAGE OF:

DAVA D. BLISS,

Petitioner and Appellee,

and

CREED MILES EVANS II,

Respondent and Appellant.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDR-11-656
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Creed Miles Evans II (self-represented); Bozeman, Montana

For Appellee:

Shari M. Gianarelli, Gianarelli & Reno, PLLC; Conrad, Montana

Submitted on Briefs:   January 27, 2016
Decided:   March 8, 2016

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Creed Miles Evans II appeals orders by the Eighth Judicial District Court, Cascade County, adopting the Standing Master's declaratory judgment that Evans' and Dava Bliss' Antenuptial Agreement (Agreement) is valid and enforceable; denying Evans' motion to alter or amend the District Court's adoption of the Standing Master's declaratory judgment; and adopting the Standing Master's findings of fact, conclusions of law, and decree of dissolution.

¶2    We restate the issues on appeal as follows:

*1. Whether the District Court erred in finding the Agreement valid and enforceable.*

*2. Whether the District Court erred or abused its discretion in determining that more than 150 firearms belonged to Bliss.*

¶3    We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

¶4    Evans and Bliss were married on October 31, 1996. Their marriage was dissolved in 2015. The Agreement is dated October 30, 1996, one day before Bliss and Evans were married. It contains both parties' notarized signatures. The Agreement provides that all property held individually by a party before and during the marriage remains that party's sole property upon dissolution.

¶5    During the dissolution proceedings before the Standing Master, Bliss filed a motion for a declaratory judgment that the Agreement governed the distribution and allocation of marital property and debt. Evans filed a response to Bliss' motion, disputing the validity of the Agreement. On January 18, 2013, after conducting a

2

hearing, the Standing Master issued a declaratory judgment that the Agreement was enforceable.

¶6 The Standing Master's declaratory judgment contained the following relevant factual findings: The Agreement was signed by Bliss and Evans on October 30, 1996, before notary Debbie Hicks in Conrad, Montana. Before Evans signed the Agreement, he met with an attorney in Conrad to obtain independent legal advice. There was only one original Agreement signed by the parties. The Agreement incorporated two exhibits—Exhibit A and Exhibit B—which listed assets compiled from information sent by Bliss and Evans, respectively. Dale Keil, the attorney who prepared the Agreement, retained the original Agreement with its exhibits in his files. Keil credibly testified that the Agreement admitted as Bliss' Exhibit 1 during the dissolution hearing was the Agreement signed by the parties on October 30, 1996, and was unaltered and in its original condition. Two assets owned by Bliss at the time of marriage—a Scottish Fold cat-breeding business and a pet-grooming business—were not listed in the Agreement; however, Evans was aware of the existence of both. In an October 14, 2005 affidavit, Evans acknowledged the existence and enforceability of the Agreement and stated that he signed the Agreement "after careful consideration and of my own free will."

¶7 Based on these findings, the Standing Master concluded that Bliss' Exhibit 1 was a true and correct copy of the Agreement. The Standing Master further concluded that the parties signed the Agreement before the wedding, and that Evans entered into the Agreement after careful consideration and of his own free will. Therefore, the Standing

3

Master concluded that the Agreement was valid and enforceable and governed the rights between Bliss and Evans in the dissolution of their marriage.

¶8 On March 27, 2013, after reviewing the record and holding a hearing, the District Court issued an order affirming and adopting the Standing Master's declaratory judgment. The District Court determined that the Standing Master's findings of fact were not clearly erroneous, her conclusions of law were correct, she did not abuse her discretion, and the interests of justice did not warrant the taking of supplemental evidence upon review. Evans filed a motion to alter or amend the District Court's order. On June 13, 2013, the District Court denied Evans' motion.

¶9 The dissolution proceeding continued and, on January 7, 2015, the Standing Master issued her findings of fact, conclusions of law, and decree of dissolution. The Standing Master reiterated many of the facts in her declaratory judgment and made additional findings regarding the division of the parties' personal property. Relevant to the issues before us, the Standing Master made the following findings regarding ownership of 186 firearms: Evans is prohibited by federal court order from owning firearms and ammunition due to his conviction of a federal felony. This includes all breech-loading guns, which are "firearms" under federal law. Before the parties' marriage, Evans gifted a number of breech-loading guns and parts to Bliss due to his conviction. Bliss kept these firearms and purchased additional breech-loading guns at Evans' suggestion. Evans legally cannot possess these firearms, and they belong to Bliss. Though Evans is prohibited from owning breech-loading guns, he is not prohibited from

4

owning muzzle-loading guns because they are not considered "firearms" under federal law. Bliss was in possession of twenty-six muzzle-loading guns that belong to Evans.

¶10 On June 4, 2015, after holding a hearing, the District Court affirmed and adopted the Standing Master's findings of fact, conclusions of law, and decree of dissolution. The District Court found that the Standing Master's findings of fact were not clearly erroneous, her conclusions of law were correct, and she did not abuse her discretion.

¶11 Evans appeals the District Court's March 27, 2013 order adopting the Standing Master's declaratory judgment; its June 13, 2013 order denying his motion to alter or amend; and its June 4, 2015 order adopting the Standing Master's findings of fact, conclusions of law, and decree of dissolution. Evans contends that the District Court erred in finding the Agreement valid and enforceable and in finding that all breech-loading firearms belong to Bliss.

**STANDARDS OF REVIEW**

¶12 We review de novo a district court's decision to adopt a standing master's report to determine whether it applied the correct standards of review to the standing master's findings of fact and conclusions of law. *Patton v. Patton*, 2015 MT 7, ¶ 17, 378 Mont. 22, 340 P.3d 1242. We apply the same standards of review to an adopted standing master's report that we do to any other district court order. *Maloney v. Home & Inv. Ctr., Inc.*, 2000 MT 34, ¶ 28, 298 Mont. 213, 994 P.2d 1124.

¶13 In reviewing a district court's division of marital property, we first determine whether the findings of fact upon which the division is based are clearly erroneous and whether the district court's conclusions of law are correct. *Patton*, ¶ 18. "A finding is

5

clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake." *Patton*, ¶ 18. If there are no clearly erroneous findings or incorrect conclusions of law, we next determine whether the district court abused its discretion. *Patton*, ¶ 19. "In a dissolution proceeding, the test for an abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in a substantial injustice." *Patton*, ¶ 19.

## DISCUSSION

¶14    *1.   Whether the District Court erred in finding the Agreement valid and enforceable.*

¶15    Antenuptial agreements are premarital agreements subject to the Uniform Premarital Agreement Act, §§ 40-2-601 through 40-2-610, MCA. Pursuant to § 40-2-605(1)(a), MCA, "[p]arties to a premarital agreement may contract with respect to . . . the rights and obligations of each of the parties in any of the property of either or both of them, whenever and wherever acquired or located." A premarital agreement is enforceable unless the party against whom enforcement is sought proves that:

> (a) that party did not execute the agreement voluntarily; or (b) the agreement was unconscionable when it was executed and, before execution of the agreement, that party: (i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party; (ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and (iii) did not have or reasonably could not have had an adequate knowledge of the property or financial obligations of the other party.

6

Section 40-2-608(1), MCA. Evidence of lack of capacity, duress, fraud, and undue influence is relevant to determining whether a premarital agreement is involuntary. *In re Marriage of Shirilla*, 2004 MT 28, ¶ 13, 319 Mont. 385, 89 P.3d 1 (citation omitted).

¶16 Evans contends that the Standing Master and the District Court erred in their factual findings regarding the validity of the Agreement. According to Evans, the Agreement is fraudulent. Although the Agreement is dated October 30, 1996, Evans contends that he was not presented with the Agreement until minutes before his wedding on October 31, 1996. Evans contends that the execution of the Agreement thus was unconscionable. Evans further contends that evidence presented at trial—phone records and markings on Bliss' personal agenda—proves that the Agreement was not correctly dated. Evans contends that this evidence conclusively demonstrates that it would have been physically impossible for the parties to drive from Vaughn, where they resided, or Great Falls, where Bliss worked that day, to Conrad, where the Agreement was signed, and back on October 30, 1996. Evans also contends that the Agreement was fraudulent because Bliss' cat-breeding and dog-grooming businesses were not included in her list of assets (Exhibit A) and Exhibit B does not accurately reflect his assets and liabilities at the time of the marriage.

¶17 "A trial court acting as a finder of fact is in the best position to observe the witnesses, including their demeanor and credibility." *In re Seizure of $23,691.00 in U.S. Currency*, 273 Mont. 474, 485, 905 P.2d 148, 155 (1995) (citation omitted). We will not substitute our judgment for that of the lower court "regarding the credibility of witnesses and the weight of their testimony." *In re Seizure of $23,691.00 in U.S. Currency*,

7

273 Mont. at 485, 905 P.2d at 155 (citation omitted). This is because "[t]he weight of the evidence and the credibility of the witnesses are exclusively the province of the trier of fact and, in the event of conflicting evidence, it is within the province of the trier of fact to determine which will prevail." *In re Seizure of $23,691.00 in U.S. Currency*, 273 Mont. at 485, 905 P.2d at 155 (citation omitted). Evans' testimony from the declaratory judgment hearing before the Standing Master reflects many of the same contentions he maintains on appeal. The Standing Master found Evans' testimony overwhelmingly not credible, particularly in light of conflicting testimony from multiple witnesses.

¶18 Before adopting the Standing Master's declaratory judgment, the District Court reviewed the transcript of the hearing before the Standing Master and held a separate hearing with the parties and their counsel. At the hearing before the Standing Master, Hicks testified that she notarized Bliss' and Evans' signatures on the Agreement on October 30, 1996. Keil testified that he received a fax of Evans' assets from Evans' business fax number, which he used to prepare Exhibit B. Although Bliss' cat-breeding and dog-grooming businesses were not listed under Bliss' assets, Evans acknowledged that, when he signed the Agreement, he was aware of both businesses.

¶19 Evans also testified that he met with an attorney before signing the Agreement, though he maintained that he did not see a draft of the Agreement at that time. Evans testified that he had experience working for three different attorneys doing legal research, investigating, and drafting legal documents. Peggy Engel, a licensed notary, testified that she notarized Evans' October 14, 2005 affidavit, in which Evans stated that he signed the

8

Agreement "after careful consideration and of my own free will." Evans admitted that he signed the affidavit but claimed he was under duress at the time because Bliss told him she would commit suicide if he did not sign it. Engel testified that she would not have notarized Evans' affidavit if Evans appeared unwilling or under duress to sign it.

¶20 The record contains sufficient evidence to support the District Court's finding that Evans voluntarily signed the Agreement. *See* § 40-2-608(1), MCA. Apart from Evans' self-serving testimony, the record contains no evidence that the Agreement was fraudulent or that Evans lacked capacity, was under duress, or was subject to undue influence when he signed the agreement. *See Shirilla*, ¶ 13. Although Evans contends that he was not provided a fair disclosure of Bliss' property because her list of assets did not include her dog-grooming or cat-breeding businesses, Evans does not dispute that he had knowledge of both businesses at the time he signed the Agreement. The District Court found that both businesses produced minimal profit when the parties were married, that Evans lived with Bliss when she was operating the cat-breeding business out of her home, and that Evans occasionally helped with small tasks involving Bliss' pet-grooming business. Evans does not dispute these facts. Given Evans' familiarity with both businesses, the fact that neither was listed under Bliss' assets did not prevent Evans from being provided a fair and reasonable disclosure of Bliss' property. *See* § 40-2-608(1)(b)(i), MCA.

¶21 The District Court applied the correct standards of review to the Standing Master's declaratory judgment by reviewing the Standing Master's findings of fact for clear error and its conclusions of law to determine whether they were correct. The District Court

determined the credibility of witnesses and weighed the evidence before it. There is substantial evidence in the record to support the District Court's adoption of the Standing Master's findings. Therefore, the District Court's factual findings regarding validity of the Agreement are not clearly erroneous. We further conclude that the District Court correctly applied the law to the facts.

¶22 *2. Whether the District Court erred or abused its discretion in determining that more than 150 firearms belonged to Bliss.*

¶23 The only specific distribution of property Evans appeals is the distribution of 186 firearms. Premarital agreements are contracts. *See Deschamps v. Deschamps*, 2009 MT 431, ¶¶ 14-15, 354 Mont. 94, 223 P.3d 324. Pursuant to § 28-3-201, MCA, "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect if it can be done without violating the intention of the parties." The contract's language "shall govern its interpretation, provided that the language is clear and explicit" and there are no absurdities. *Deschamps*, ¶ 15.

¶24 The Agreement clearly states that "[a]ny property inherited or gifted to either party shall be owned as separate property by the inheriting party." Regarding gifts between the parties, the Agreement provides: "Nothing in this agreement shall be construed as a waiver or renunciation by either party of any gift, bequest, or devise which may be made by the other party in addition to any benefit given to them by reason of this agreement." Evans does not dispute that he gave all of his breech-loading firearms to Bliss before and during the parties' marriage. Bliss was the sole owner of those firearms upon dissolution

10

of the parties' marriage. Therefore, under the clear and explicit language of the Agreement, the firearms belong to Bliss.

¶25 The District Court did not err in finding that all breech-loading firearms belong to Bliss. The District Court correctly applied the law to the facts. The court did not act arbitrarily without employment of conscientious judgment, and its distribution of the parties' assets was just.

## CONCLUSION

¶26 We affirm the District Court's March 27, 2013 order adopting the Standing Master's declaratory judgment; its June 13, 2013 order denying Evans' motion to alter or amend; and its June 4, 2015 order adopting the Standing Master's findings of fact, conclusions of law, and decree of dissolution. The District Court did not err in finding the Agreement valid and enforceable. Nor did the District Court err or abuse its discretion in determining that more than 150 firearms belong to Bliss.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE