FILED

04/21/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0008

DA 19-0008

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 91

IN RE THE MARRIAGE OF:

TERRI ELDER,

      Petitioner and Appellee,

  and

SAM MAHLUM,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and For the County of Cascade, Cause No. BDR-17-621
                Honorable Elizabeth Best, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jason T. Holden, Katie R. Ranta, Faure Holden Attorneys at Law, P.C.,
                Great Falls, Montana

        For Appellee:

                Meghan Lulf Sutton, Law Office of Meghan Lulf Sutton, Great Falls,
                Montana

Submitted on Briefs:  September 25, 2019

Decided:  April 21, 2020

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Sam Mahlum (Sam) appeals from the judgment of the Montana Eighth Judicial District Court, Cascade County, dissolving his marriage to Terri Elder (Terri) and equitably apportioning their marital estate. The narrow issue on appeal is:

> *Whether the District Court erroneously characterized Sam's early disability retirement benefit as a divisible marital asset rather than the equivalent of post-dissolution employment income?*

¶2 We reverse and remand for further proceedings consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Sam and Terri married in 2000, in Helena, Montana. Two children were born as issue of the marriage in 2001 and 2002, respectively. The parties lived in Augusta, Montana. Terri primarily stayed home and cared for the children but occasionally worked as a substitute teacher and a fitness/yoga instructor. From 2001-2012, Sam was employed as a deputy sheriff with the Lewis and Clark County Sheriff's Office in Helena and commuted from Augusta.

¶4 In 2006, Sam was involved in an on-the-job motor vehicle accident resulting in permanent disabling injury, related PTSD, depression, and ongoing physical pain. His injuries ultimately forced him to leave the sheriff's office in 2012, after approximately eleven years of service. Sam later briefly worked for the Montana Human Rights Bureau until his injuries similarly forced him to leave that position in 2015. Sam and Terri separated in the spring of 2017. Terri filed a dissolution petition in November of that year and, a year later, the court entered a final decree dissolving the parties' marriage, equitably

2

dividing their marital estate, and providing for the parenting of their children during the remaining few years of their minority.

¶5 At some point after he was no longer able to work, Sam applied for, and ultimately obtained, a disability determination from the Montana Public Employee Retirement Board making him eligible to receive monthly non-taxable disability retirement benefits from the Montana Sheriff's Retirement System (SRS) provided by Title 19, ch. 7, MCA. In accordance with the statutory plan, Sam will receive SRS disability benefits until November 25, 2025, when he reaches the normal age of SRS retirement at age 50. His non-taxable disability benefits will then convert to normal, taxable SRS service retirement benefits. As of the date of dissolution of the parties' marriage, Sam's monthly SRS disability benefit was $3,397.73, subject to a 3% guaranteed annual increase.

¶6 At the time of dissolution, Terri was employed at the Bunkhouse Inn in Augusta and as a volleyball coach for the Augusta School District. Terri had previously sought other employment outside of Augusta but was unable to find an acceptable option due to the cost and difficulty of commuting from Augusta and her need to be available for the parties' children in Augusta. As of 2017, Terri's adjusted gross annual income was $17,054.

¶7 The parties agreed that Terri would keep and assume the mortgage on the former family home in Augusta. Based on the evidence at hearing, the District Court determined that the value of the home and property was approximately $140,000, with an outstanding mortgage balance of approximately $140,000. The parties further agreed that they would each take their own student loan debts and that Sam would further take all of their outstanding credit card debt, his medical debt, and the parties' outstanding federal tax debt.

3

The total marital debt apportioned to Sam was approximately $92,849.73. The parties further agreed that Terri would take the parties' 2000 Honda CRV vehicle and 1986 Chevrolet van and that Sam would take their 2003 Harley Davidson motorcycle. The parties stipulated to a final parenting plan for the limited remainder of the minority of their children. The District Court did not address child support and Terri did not request spousal maintenance.

¶8    The only significant matter in dispute was the status of Sam's SRS disability benefits—whether a divisible marital asset or the indivisible equivalent of future earnings until it converts to a normal SRS service retirement benefit at the normal age of SRS retirement. Citing *In re Marriage of Cooper*, 243 Mont. 175, 179, 793 P.2d 810, 812 (1990), the District Court concluded that Sam's SRS disability benefits were a divisible marital asset, no different from his normal SRS service retirement benefits. The court reasoned that the only material difference between SRS disability benefit and normal SRS service retirement benefit was that Sam's disability made him eligible for early retirement prior to normal SRS retirement age. Without distinction, the court accordingly characterized Sam's SRS disability and SRS service retirement benefits as a single divisible marital asset and then apportioned the remaining term of the disability benefit, and the first eleven years of the normal service retirement benefit, between the parties on a 50/50 basis. Upon the threshold conclusion that Sam's disability benefits were essentially no different than his normal service retirement benefits, the court reasoned that: (1) his "disability income represent[ed] a replacement of the income that [he] was earning" during the marriage; (2) his "disability payment [was] the only significant [marital] asset"; (3) the

4

parties had equal "earning power"; and (4) the 11-year split of his normal retirement service benefit corresponds to the "length of the[ir] marriage." Sam timely appeals.

**STANDARDS OF REVIEW**

¶9 District courts have broad discretion to equitably apportion the marital estate in dissolution proceedings based on the criteria of § 40-4-202(1), MCA. *Deschamps v. Deschamps*, 2009 MT 431, ¶ 11, 354 Mont. 94, 223 P.3d 324; *Collett v. Collett*, 190 Mont. 500, 503-04, 621 P.2d 1093, 1095 (1981). An equitable division of the marital estate necessarily requires a reasonably accurate account and valuation of all significant marital assets and liabilities. *In re Marriage of Lundvall*, 241 Mont. 172, 175, 786 P.2d 10, 12 (1990); *In re Marriage of Dirnberger*, 237 Mont. 398, 401-02, 773 P.2d 330, 332 (1989); *In re Marriage of Popp*, 206 Mont. 415, 420, 671 P.2d 24, 27 (1983); *Collett*, 190 Mont. at 504, 621 P.2d at 1095; *Cook v. Cook*, 188 Mont. 472, 478-79, 614 P.2d 511, 514-15 (1980); *Herring v. Herring*, 184 Mont. 353, 355, 602 P.2d 1006, 1007 (1979).[1] While § 40-4-202, MCA, does not require a strict, itemized accounting and valuation of every marital asset and liability in every case, district courts must at least make findings of fact that are sufficient as a whole to manifest an equitable division of the marital estate. *In re Marriage of Lewton*, 2012 MT 114, ¶¶ 15-20, 365 Mont. 152, 281 P.3d 181; *In re Marriage of Hayes*, 2002 MT 281, ¶ 19, 312 Mont. 440, 60 P.3d 431; *In re Marriage of Harkin*, 2000 MT 105, ¶ 31, 299 Mont. 298, 999 P.2d 969; *In re Marriage of Stephenson*, 237 Mont. 157, 160,

---

[1] *See also* § 40-4-254, MCA ("court may not enter a judgment . . . [regarding] the parties' property rights unless each has executed and served a copy of the final declaration of disclosure" of marital assets and liabilities required by § 40-4-253, MCA).

5

772 P.2d 846, 848 (1989).  An equitable division of the marital estate does not necessarily require an equal or 50/50 split of marital assets, liabilities, or net value.  *In re Marriage of McNellis*, 267 Mont. 492, 501, 885 P.2d 412, 418 (1994) (internal citations omitted); *In re Marriage of Garner*, 239 Mont. 485, 488, 781 P.2d 1125, 1127 (1989).  An apportionment is equitable if fair and reasonable under the totality of the circumstances at issue.  *Danelson v. Danelson*, 253 Mont. 310, 317, 833 P.2d 215, 220 (1992).

¶10    We review district court findings of fact accounting for and valuing marital estate assets and liabilities only for clear error.  *In re Marriage of Foreman*, 1999 MT 89, ¶ 14, 294 Mont. 181, 979 P.2d 193; *Danelson*, 253 Mont. at 317, 833 P.2d at 219-20. We review related conclusions of law de novo for correctness.  *Foreman*, ¶ 14; *Danelson*, 253 Mont. at 317, 833 P.2d at 219-20.  We review the ultimate apportionment of marital estates for an abuse of discretion.  *Foreman*, ¶ 14; *Danelson*, 253 Mont. at 317, 833 P.2d at 219-20. A finding of fact is clearly erroneous only if not supported by substantial evidence, the court misapprehended the effect of the evidence, or, based on our review of the record, we have a definite and firm conviction that the lower court was otherwise mistaken.  *In re Marriage of Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894 (citing *In re D.E.*, 2018 MT 196, ¶ 21, 392 Mont. 297, 423 P.3d 586).  An abuse of discretion occurs if a court exercises granted discretion based on a clearly erroneous finding of fact, an erroneous conclusion or application of law, or otherwise acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *Bessette*, ¶ 13.

**DISCUSSION**

6

¶11    *Whether the District Court erroneously characterized Sam's early disability retirement benefit as a divisible marital asset rather than the equivalent of post-dissolution employment income?*

¶12    Sam asserts that his post-dissolution SRS disability retirement benefits are the equivalent of post-dissolution future earnings, and thus not a marital estate asset as referenced in § 40-4-202(1), MCA.  Terri contrarily asserts that there is no material difference between Sam's SRS disability retirement benefits and subsequent service retirement benefits at and after age 50.  She asserts that the only difference is that his disability made him eligible for early retirement, with the same monthly benefit as at normal retirement age, thus rendering his disability benefits a marital asset like all other ordinary retirement benefits.  We agree with Sam.

¶13    Under statutory defined benefit retirement plans, Title 19, chapters 2-3, 5-9, and 13, MCA, provide various service and disability retirement benefits for distinct groups of state and local government employees.  *See* § 19-2-301, MCA.[2]  Under those plans, normal service retirement benefits are generally based on a member's length of qualified service and a group-particular percentage of a member's highest average compensation over those service years, paid from group-specific retirement trust funds funded by employee payroll

---

[2] The Montana Public Employees' Retirement Board uniformly administers the "retirement systems and plans within the systems under chapters 3, 5 through 9, and 13 of" Title 19, MCA. Sections 19-2-302 and -403(1), MCA.  As an alternative to the provided defined benefit plans, Title 19 further provides a market-based, "risk-accepting" option generally allowing members to take advantage of pertinent financial market conditions, but subject to the attendant risk of market fluctuations.  *Wrzesien v. State*, 2016 MT 242, ¶¶ 11-12, 385 Mont. 61, 380 P.3d 805 (distinguishing "risk-averse" defined benefit plans from "risk-accepting" alternative).  *See also* §§ 19-2-303(16), 19-3-103(2), and Title 19, ch. 21, MCA.  The public employees' retirement benefits discussed and at issue here are statutory defined benefit retirement plan benefits.

withholdings and matching employer contributions during members' service years. *See* Title 19, chapters 3, 5-9, and 13, MCA; *Wrzesien*, ¶ 11; *Hall v. State*, 2006 MT 37, ¶¶ 13-14, 331 Mont. 171, 175, 130 P.3d 601, 604.

¶14    In marital dissolution proceedings, as of the date of separation or dissolution as equitable under the circumstances, district courts must "finally equitably apportion" all assets and liabilities "belonging to either or both [spouses], however and whenever acquired." Section 40-4-202(1), MCA; *Hutchins v. Hutchins*, 2018 MT 275, ¶¶ 64-65, 393 Mont. 283, 430 P.3d 502; *In re Marriage of Geror*, 2000 MT 60, ¶¶ 11-12, 299 Mont. 33, 996 P.2d 381; *In re Marriage of Wagner*, 208 Mont. 369, 378-81, 679 P.2d 753, 757-59 (1984); *Vivian v. Vivian*, 178 Mont. 341, 344, 583 P.2d 1072, 1074 (1978). Accordingly, the portion of ordinary retirement benefits attributable to marital income contributions are generally marital estate assets subject to equitable division under § 40-4-202(1), MCA. *In re Marriage of Spawn*, 2011 MT 284, ¶¶ 4, 10, 362 Mont. 457, 269 P.3d 887; *In re Marriage of Truax*, 271 Mont. 122, 125-26, 894 P.2d 936, 938 (1995) (affirming time-rule valuation); *In re Marriage of Butler*, 243 Mont. 521, 524, 795 P.2d 467, 469 (1990); *Rolfe v. Rolfe*, 234 Mont. 294, 296-98, 766 P.2d 223, 225-26 (1988) (discussing present-value and time-rule valuation methods); *Kis v. Kis*, 196 Mont. 296, 299-300, 639 P.2d 1151, 1153 (1982), *overruled in part on other grounds by In re Marriage of Kecskes*, 210 Mont. 479, 483, 683 P.2d 478, 480 (1984); *Karr v. Karr*, 192 Mont. 388, 400, 628 P.2d 267, 274 (1981). The marital portion of ordinary retirement benefits are generally marital estate assets under § 40-4-202(1), MCA, because they are in essence a form of deferred compensation earned by a spouse during the marriage, drawn or withheld from the marital

8

estate, and later paid out in installments upon retirement eligibility. *See Rolfe*, 234 Mont. at 296-97, 766 P.2d at 225; *In re Marriage of Pryor*, 224 Mont. 488, 492, 731 P.2d 895, 898 (1986); *Gragg v. Gragg*, 12 S.W.3d 412, 418 (Tenn. 2000); *In re Marriage of Brown*, 544 P.2d 561, 564-65 (Cal. 1976); *Deferred Compensation* and *Defined-Benefit Plan*, *Black's Law Dictionary*, 11th ed. (2019). *See also* §§ 19-2-303(15), (32)(a), (33)-(36), (43)(a), (44)-(48), and 19-50-101(2), MCA. As aptly recognized by the Tennessee Supreme Court under an equitable apportionment scheme similar to that of § 40-4-202(1), MCA[3]:

> [ordinary] [p]ension and retirement benefits compensate individuals who live past retirement age. . . . [They essentially] constitute deferred compensation for services [previously] rendered and function as a substitute for life savings. Like any joint savings accumulated during the marriage, pension and retirement benefits are subject to [equitable] distribution . . . upon divorce.

*Gragg*, 12. S.W.3d at 418.

¶15 SRS members are eligible for normal "service retirement benefits" upon reaching 20 years of service without disability. Sections 19-2-303(35), (48), and 19-7-501, MCA. Vested SRS members without 20 years of service credit are eligible for early service retirement at age 50. Sections 19-2-303(10)(a), (35), (48), 19-7-501(1), and -502, MCA. Distinct from service retirement benefits, the SRS separately provides for monthly

---

[3] *See* Tenn. Code Ann. § 36-4-121.

"disability retirement benefit[s]" payable to members who become permanently disabled before eligible for service retirement benefits. *See* §§ 19-2-303(20) and 19-7-601, MCA.[4]

¶16    We have yet to squarely address the problematic question of whether or when the defined benefit plan disability benefits administered under Title 19, ch. 2, MCA, may be divisible marital estate assets under § 40-4-202(1), MCA, on the same basis as service retirement benefits.[5]  On the surface, both are technically defined benefit plan "retirement benefits" drawn from the same underlying plan trust fund funded by employee payroll withholdings and matching employer contributions during member service years. *See, e.g.*, §§ 19-2-303(43)(a), -501, and -506(1), MCA.  To the extent a member was in service during the marriage at issue, the mandatory payroll withholdings from the employee derived from marital estate income.  The superficial similarity ends there.

¶17    As a threshold matter, the SRS defined benefit retirement plan clearly distinguishes between normal service retirement, early service retirement, and disability retirement benefits.  *See* §§ 19-2-303(10)(a), (22), (35), 43(a), (48), -702(2), and 19-7-501 through -503, MCA.[6]  The calculation formula for normal service retirements benefits

---

[4] In this context, "disabled" or "disability" means the "total inability . . . to perform the member's duties by reason of physical or mental incapacity . . . [that is] of permanent duration or of extended and uncertain duration."  Section 19-2-303(20), MCA.

[5] As noted by other courts, disability retirement benefits, unlike ordinary retirement benefits, "have varied characteristics and purposes which make . . . [similar] classification problematic." *Gragg*, 12. S.W.3d at 416 (citing *Ciliberti v. Ciliberti*, 542 A.2d 580, 582 (Pa. Super. Ct. 1988)).

[6] *See also* §§ 19-3-902, -906, -1002(1), MCA (Public Employees' Retirement System); § 19-6-503, MCA (Highway Patrol Officers' Retirement System); and § 19-20-802, MCA (Teachers' Retirement System).

without prior disability, and for disability retirement benefits after 20 years of service, is 2.5% of the "member's highest average compensation for each year of service credit." Sections 19-7-503(1) and -601(2)(b), MCA.[7] The calculation formula for early service retirement benefits at age 50 before 20 years of service is the "actuarial equivalent of the [then-]accrued portion" of the service retirement benefit that the member would otherwise have been eligible for upon 20 years of service or reaching age 60, "whichever event would have occurred first." Sections 19-2-303(22) and 19-7-502, MCA. The calculation formula for non-service-related disability retirement benefits after vesting but before normal retirement age is the "actuarial equivalent" of 2.5% of the "member's highest average compensation for each year of service credit" "standing to the member's credit at the time of the . . . disability retirement." Sections 19-7-503(1) and -601(1), MCA.[8] As manifest by their similar eligibility requirements and calculation methods based on specified years of service, each of those types of SRS service and disability benefits is essentially a form or derivative of previously earned but deferred compensation, later payable upon the particular retirement eligibility.

¶18 In contrast, unlike the substantially similar calculation formulas for other types of SRS service and disability retirement benefits, the calculation formula for SRS disability retirement benefits based on a service-related disability before 20 years of service is 50%

---

[7] For SRS members hired before July 1, 2011, "highest average compensation" means the "highest average monthly compensation" earned by the member "during any 36 consecutive months of membership service." Section 19-7-101(3)(a)(i), MCA.

[8] SRS members are not "vested" in the SRS until completing "5 years of membership service." Section 19-2-303(56)(a), MCA.

of "the member's highest average compensation" as of the date of the retirement. Section 19-7-601(2)(a), MCA. More significantly, unlike the eligibility requirements for other SRS service and disability retirement benefits, eligibility for disability retirement benefits based on a service-related disability before 20 years of service does not depend on whether members have reached normal retirement age or equivalent, or are vested in the plan at the time of the disability. It depends only on the fact that the member was disabled in the line of duty and can no longer perform the duties of the job, regardless of number of completed service years. *See* §§ 19-2-303(20) and 19-7-601(2)(a), MCA. *Compare* §§ 19-2-303(56), 19-7-501, -503(1), -601(1) and (2)(b), MCA. Thus, based on their substantially different eligibility requirement and related calculation methodology, SRS disability retirement benefits based on a service-related disability before 20 years of service more closely resemble a replacement or compensation for lost service income that the member otherwise would have earned in the future but for the disability, rather than a form of previously earned but deferred service income like other SRS service and disability retirement benefits.

¶19    While an equitable consideration in determining *how* to equitably divide the marital estate and whether spousal maintenance is appropriate, *see* §§ 40-4-202(1) and -203, MCA (in re relative future income sources and potentials), post-dissolution employment income earned after equitable division of the marital estate is as a matter of law *not* a marital estate asset or property because it has yet to accrue or exist, and thus does not "belong[] to either or both" at the time of equitable division of the marital estate. *See* § 40-4-202(1), MCA; *Hayes*, ¶¶ 25-28. *See also, e.g., In re Marriage of Hansen*, 62 P.3d 1066, 1067-68 (Colo.

12

Ct. App. 2002); *Finkenstaedt v. Finkenstaedt*, 352 P.3d 1266, 1271 (Ok. Civ. App. 2014); *Reese v. Reese*, 671 N.E.2d 187, 192 (Ind. Ct. App. 1996); *Davey v. Davey*, 415 N.W.2d 84, 88 (Minn. Ct. App. 1987); *Stevens v. Stevens*, 492 N.E.2d 131, 135 (Ohio 1986). It then follows that, like the future post-dissolution income they replace or compensate for, post-dissolution SRS disability retirement benefits based on a disability before 20 years of service are similarly not marital "property" or "assets" as referenced in § 40-4-202(1), MCA. *Cf. In re Marriage of Castor*, 249 Mont. 495, 500-03, 817 P.2d 665, 668-69 (1991) (distinguishing between portion of federal civil service "disability" benefits intended as "compensation . . . for loss of earning power" and additional portion intended for "retirement support" and holding that federal civil service disability benefits at issue were more akin to normal retirement benefits and thus a divisible marital estate); *In re Marriage of Blankenship*, 210 Mont. 31, 36, 682 P.2d 1354, 1356-57 (1984) (holding that workers' compensation benefits may or may not be a marital estate asset depending on whether, and to what extent, those benefits were compensation for wage loss during the marriage, post-dissolution wage loss or loss of earning capacity, "or some other purpose"). *See also Hansen*, 62 P.3d at 1067-68 (characterizing disability retirement benefits under Colorado PERA as more akin to true disability benefits than retirement benefits prior to normal retirement age and thus holding that disabled correction officer's PERA disability benefits were not a divisible marital estate asset prior to normal retirement age); *In re Marriage of Perkins*, 26 P.3d 989, 991 (Wash. Ct. App. 2001) (distinguishing between component of disability benefits intended as future wage replacement and component intended as compensation for lost wages during the marriage or as normal retirement income); *Gragg*,

13

12 S.W.3d at 416-19 (rejecting minority "mechanistic approach" in favor of majority "analytical approach . . . focus[ing] on the nature and purpose of the specific disability benefits at issue" rather than the isolated fact that "premiums were paid with marital funds or [that] the marital estate acquired the benefits" with marital funds similar to ordinary pension benefits); *In re Marriage of Saslow*, 710 P.2d 346, 351-52 (Cal. 1985) (disability benefits are not community property to the extent intended to replace post-dissolution earnings that would have been the separate property of the disabled spouse, but are community property to the extent intended as normal retirement income—following *In re Marriage of Stenquist*, 582 P.2d 96 (Cal. 1978)); *Thompson v. Thompson*, 642 A.2d 1160, 1163-64 (R.I. 1994) (noting split of authority in various state jurisdictions); Nat'l Legal Research Grp., *Classifying Disability Benefits*, 14 No. 9 Equitable Distribution J. 97, 99 (1997) (noting split of authority between mechanistic/mechanical approach and separate property/component purpose approaches).[9]

---

[9] *See similarly* 2 Brett R. Turner, *Equitable Distribution of Property*, § 6:52, 430-31 (4th ed. 2019); *see, e.g.*, *Coffman v. Coffman*, 215 S.W.3d 309, 312 (Mo. Ct. App. 2007) (finding spouse's pension benefits as "a hybrid, containing both a disability and a deferred compensation component"); *Rumler v. Rumler*, 932 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2006) ("[o]nly the retirement portion" of disability pension "is subject to equitable distribution"); *Striefel v. Striefel*, 689 N.W.2d 415, 420 (N.D. 2004) (portion of disability benefit "continu[ing] beyond retirement age" considered as deferred income in retirement); *Conner v. Conner*, 68 P.3d 1232, 1235 (Alaska 2003) (portion of spouse's "workers' compensation income . . . substitut[ing] for . . . regular retirement benefits after [retirement] maturity . . . should be viewed as marital property and divided"); *Allard v. Allard*, 708 A.2d 554, 558 (R.I. 1998) (only portion of spouse's "disability pension attributable to his retirement pay is marital property subject to equitable distribution"—any "excess . . . amount represents compensation for [spouse's] disability and lost earning capacity and is [thus] separate property not subject to distribution"). *Accord Ciliberti*, 542 A.2d at 582.

¶20 Terri contrarily relies on *Cooper*, *In re Marriage of Murphy*, 261 Mont. 363, 862 P.2d 1143 (1993), and *In re Marriage of Boharski*, 257 Mont. 71, 847 P.2d 709 (1993). In *Cooper*, we considered whether a spouse's post-dissolution federal Veterans' Administration (VA) disability benefits were marital estate assets subject to division under § 40-4-202(1), MCA. *Cooper*, 243 Mont. at 178-79, 793 P.2d at 812. Noting that ordinary military retirement benefits, like other ordinary retirement benefits, are generally divisible marital estate assets under § 40-4-202(1), MCA, we cursorily held by comparison that the subject VA disability benefits were likewise a divisible marital asset based on the "however and whenever acquired" language of § 40-4-202(1), MCA. *Cooper*, 243 Mont. at 179, 793 P.2d at 812.

¶21 We reconsidered *Cooper* three years later in light of *Mansell v. Mansell*, 490 U.S. 581, 594-95, 109 S. Ct. 2023, 2032 (1989) (holding that federal law preempted and precluded state law division of VA disability retirement pay as marital property). *Murphy*, 261 Mont. at 365-68, 862 P.2d at 1144-46 (1993). The issue in *Murphy* was whether, in addition to precluding VA disability benefits as a divisible marital asset, *Mansell* similarly precluded consideration of those benefits even as an equitable consideration in how to equitably divide the marital estate under § 40-4-202(1), MCA (in re future income sources and potentials). *Murphy*, 261 Mont. at 365-68, 862 P.2d at 1144-46. As a preliminary matter, we acknowledged that *Cooper* was erroneous in light of *Mansell*, *Murphy*, 261 Mont. at 365, 862 P.2d at 1145, and then expressly limited *Cooper* to narrowly hold that, as a matter of preemptive federal law, VA disability benefits elected in lieu of retirement benefits are not divisible marital estate assets under § 40-4-202(1), MCA, *Murphy*, 261

15

Mont. at 367-68, 862 P.2d at 1145-46. We then ultimately held that, even though the subject VA disability benefits were not marital estate assets, the district court nonetheless properly considered them as a relevant equitable consideration under § 40-4-202(1), MCA, in determining how to equitably divide the marital estate. *Murphy*, 261 Mont. at 367-68, 862 P.2d at 1145-46.

¶22 Even before *Murphy*, the only type of disability benefits at issue in *Cooper* were VA disability benefits. *Cooper*, 243 Mont. at 178-79, 793 P.2d at 812. Other than cursory reference to "however and whenever acquired" language of § 40-4-202(1), MCA, *Cooper* provided no discerning analysis or rationale further indicating when or on what basis, absent the federal preemption later recognized in *Murphy,* that VA disability benefits were sufficiently similar in nature to ordinary retirement benefits to be their categorical or substantive equivalent. Consequently, nothing in *Cooper* supports the proposition, asserted here, that the "however and whenever acquired" language of § 40-4-202(1), MCA, categorically requires inclusion in the marital estate of all disability retirement benefits in every case on the same basis as ordinary retirement benefits. Thus, even on its face prior to *Murphy*, *Cooper* provides no guidance here.

¶23 *Murphy* is similarly unhelpful. As in *Cooper*, the only type of benefits at issue in *Murphy* were VA disability payments precluded from inclusion in the marital estate by preemptive federal law. *Murphy*, 261 Mont. at 365-68, 862 P.2d at 1144-46. The narrow issue was whether, upon proper exclusion from the marital estate pursuant to *Mansell*, the district court could still consider them as a relevant consideration under § 40-4-202(1), MCA, in determining how to equitably divide the marital estate. *Murphy*, 261 Mont.

16

at 365-68, 862 P.2d at 1144-46. Unfortunately, despite the narrowness of the issue and holding in *Murphy*, we unnecessarily left a loose-end with our statement that "*Cooper* remains precedent for other kinds of military disability" payments. *Murphy*, 261 Mont. at 366, 862 P.2d at 1145. However, in light of the limited issues and holdings in both *Cooper* and *Murphy*, our statement in *Murphy* (that "*Cooper* remains precedent for other kinds of military disability" payments) was non-essential dicta. *See State ex rel. Lovins v. Toole County*, 278 Mont. 253, 259, 924 P.2d 693, 696 (1996) (in re dictum). Thus, *Murphy*, like *Cooper*, is of no precedential value to the larger question of whether or when early disability retirement benefits are sufficiently similar to ordinary retirement benefits to be marital estate assets under § 40-4-202(1), MCA.

¶24     *Boharski* is similarly inapposite here. With focus on union pension disability benefits, the pertinent issue in *Boharski* was whether the district court properly required a disabled spouse to pay temporary maintenance under § 40-4-203, MCA, when his only sources of future income were monthly social security disability benefits, workers' compensation benefits, and the subject union disability benefits. *Boharski*, 257 Mont. at 73-76, 847 P.2d at 710-13. Distinguishing the maintenance obligation (and related qualified domestic relations order (QDRO) securing it[10]) as mechanisms for compelling performance of a legal duty of support, we essentially held that neither constituted a

---

[10] As defined and where applicable under 29 U.S.C. § 1056 (Retirement Equity Act of 1984), a "qualified domestic relations order" is a means for diverting certain otherwise divisible retirement pension benefits from one spouse directly to the other. *Boharski*, 257 Mont. at 73, 847 P.2d at 711. For similar diversion of otherwise divisible retirement benefits provided by the various public employee retirement systems administered under Title 19, ch. 2, MCA, see § 19-2-907, MCA (defining and providing for "family law orders").

judgment debt as referenced in § 25-13-608, MCA (exempting disability benefits from execution by judgment debtor). We thus rejected the disability pensioner's assertion that § 25-13-608, MCA, precluded consideration of his pension disability benefits as a source of future income relevant to his ability to pay maintenance under the equitable criteria of § 40-4-203, MCA. *Boharski*, 257 Mont. at 75-76, 847 P.2d at 711-13. In a directly related matter consistent with our holding under § 40-4-203, MCA, we further recognized that "[d]isability benefits can [similarly] be considered . . . in determining" how to equitably divide the marital estate under § 40-4-202(1), MCA. *Boharski*, 257 Mont. at 75, 847 P.2d at 712. The question of whether the subject disability benefits were or could be a marital estate asset under § 40-4-202(1), MCA, was not at issue. *Boharski*, 257 Mont. at 75-76, 847 P.2d at 712-13. Thus, like *Cooper* and *Murphy*, *Boharski* has no bearing on whether or when early disability retirement benefits under a defined benefit plan are sufficiently similar to ordinary service retirement benefits to be divisible marital estate assets under § 40-4-202(1), MCA.

¶25 Here, after repeated efforts to continue to work in other capacities, Sam's service-related disability forced him to retire from working as a sworn deputy sheriff after only 11 years of service, prior to normal SRS service retirement eligibility. Based on the foregoing statutory analysis, his post-dissolution SRS disability retirement benefits are therefore more akin to a replacement or compensation for future employment income lost due to his service-related disability, rather than a form of deferred income for work previously performed like SRS service and disability retirement benefits under other circumstances. The District Court recognized as much when it found that Sam's "disability

18

income represent[ed] a replacement of the income [he] was earning" before his disability. We hold that, under the circumstances of this case, the District Court erroneously characterized and divided Sam's post-dissolution SRS disability retirement benefits as a marital estate asset under § 40-4-202(1), MCA.[11]

¶26 Though not marital estate assets subject to division under § 40-4-202(1), MCA, under the circumstances of this case, Sam's post-dissolution disability retirement benefits remain an equitable consideration, *inter alia*, in determining *how* to equitably divide the marital estate and whether spousal maintenance may be appropriate. *See* §§ 40-4-202(1) and -203, MCA (in re relative future income sources and potentials). *See also Boharski*, 257 Mont. at 75-76, 847 P.2d at 711-13; *Murphy*, 261 Mont. at 367-68, 862 P.2d at 1145-46. The determination of an equitable division of the marital estate and whether spousal maintenance is appropriate are intertwined matters of equity under the criteria of §§ 40-4-202(1) and -203, MCA. *In re Marriage of Johnsrud*, 181 Mont. 544, 547-50, 572 P.2d 902, 904-05 (1977). Consequently, the erroneous inclusion and division of disability retirement benefits as a marital estate asset warrants remand for redetermination of an equitable division of the actual marital estate but nevertheless subject to consideration of those benefits as a relevant consideration under § 40-4-202(1), MCA, and, as may be at

---

[11] As a matter of law, Sam's SRS disability retirement benefits automatically convert to normal service retirement benefits at age 50 at the same "monthly benefit amount" "without recalculation." Section 19-2-406(5), MCA. Without reconciliation under federal or state income tax laws, it is undisputed on the record that, upon conversion, those benefits will effectively convert from non-taxable income to taxable income. Sam does not contest the District Court's conclusion that his service retirements benefits, upon conversion from disability benefits at age 50, are a divisible marital asset under § 40-4-202(1), MCA.

issue, whether spousal maintenance is appropriate under § 40-4-203, MCA. *Strong v. Strong*, 2000 MT 178, ¶¶ 27-40, 300 Mont. 331, 8 P.3d 763 (remanding for reconsideration of equitable division, maintenance, and child support on erroneous inclusion of VA military disability benefits as marital estate asset).

## CONCLUSION

¶27 Under the circumstances of this case, we hold that the District Court erroneously characterized and divided Sam's post-dissolution SRS disability retirement benefits as a marital estate asset under § 40-4-202(1), MCA. We accordingly reverse and remand for redetermination of an equitable division of the actual marital estate assets under § 40-4-202(1), MCA, and, as may be at issue on remand, whether spousal maintenance may be appropriate under the equitable criteria of § 40-4-203, MCA.

¶28 Reversed and remanded for further proceedings in accordance with this Opinion.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

20